

**FILED**

Feb 28 2017, 7:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael L. Einterz, Jr.
Mike Einterz
Einterz & Einterz
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Aaron T. Craft
Elizabeth M. Littlejohn
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alan Mizen,

*Appellant-Defendant,*

v.

State of Indiana ex rel. Gregory
F. Zoeller, Attorney General of
Indiana,

*Appellee-Plaintiff.*

February 28, 2017

Court of Appeals Case No.
49A02-1605-PL-1132

Appeal from the Marion Superior
Court

The Honorable David J. Dreyer,
Judge

Trial Court Cause No.
49D10-1506-PL-19961

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Alan Mizen (Mizen), appeals the trial court's summary judgment in favor of Appellee-Plaintiff, State of Indiana *ex rel.* Curtis Hill, Attorney General of Indiana (State), as well as the denial of his own motion for summary judgment.

We affirm in part, reverse in part, and remand.

# ISSUES

Mizen raises five issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the trial court erred in granting summary judgment to the State because its claim is barred by the statute of limitations;

(2) Whether the trial court erred in granting summary judgment to the State because the Attorney General does not have statutory authority to pursue special audit costs; and

(3) Whether the trial court erred in granting summary judgment to the State under the Crime Victims Relief Act (CVRA) because the State did not suffer a pecuniary loss.

# FACTS AND PROCEDURAL HISTORY

In November of 2001, Mizen was hired as the chief financial officer for Center Township (the Township) in Marion County, Indiana. The Township "is one of nine townships in Marion County, Indiana" and is the most populated township in the county. (Appellant's App. Vol. II, p. 93). The Township's

primary mission "is to provide emergency and short-term assistance to the poor and needy, to treat everyone with dignity and respect, and to help clients become self-sufficient." (Appellant's App. Vol. II, pp. 93-94). The Township also aims "to be fiscally responsible and accountable to the public." (Appellant's App. Vol. II, p. 94).

[5] On June 10, 2010, Mizen logged onto the Township's computer system and created an invoice for a check in the amount of $343,541.08. According to the invoice, this check was purportedly payable to the Treasurer of the State of Indiana. However, the actual check from the Township's bank account was made payable to "Attorney's General Clearing Tr." (Appellant's App. Vol. II, p. 22). A few days later, Mizen endorsed the check and deposited it into an account held by "Alan S Mizen DBA Attorney's General Clearing Tr." (Appellant's App. Vol. II, p. 22). Thereafter, Mizen transferred the funds to his various personal accounts and used the money to purchase a home in Zionsville, Indiana; purchase a Toyota Tacoma pickup truck; fund his child's college education; finance several personal vacations; purchase a diamond necklace and diamond ring; and make other purchases. Mizen's employment with the Township ended in January of 2011.

[6] The Indiana State Board of Accounts (SBOA) is tasked with "examin[ing] all accounts and all financial affairs of every public office and officer, state office, state institution, and entity." Ind. Code § 5-11-1-9(a). On January 22, 2014, the SBOA commenced a routine audit of the Township. During the course of this audit, the SBOA discovered discrepancies relating to the check that Mizen

drafted for $343,541.08. This resulted in the SBOA conducting a special investigation of the Township's accounts for the time period covering January 1, 2010, through January 20, 2011. In addition, the SBOA reported its concerns of misappropriation of public funds to the authorities, including the Federal Bureau of Investigation. As a result, Mizen was subsequently charged in the United States District Court for the Southern District of Indiana with the theft of $343,541.08 belonging to the Township, which receives federal funding. On October 22, 2014, Mizen pled guilty pursuant to a plea agreement that left sentencing to the discretion of the federal district court. Mizen agreed that he would pay restitution in the amount of $343,541.08 to the Township.

[7] Following Mizen's guilty plea, on November 10, 2014, the SBOA completed its special investigation audit and filed a Special Investigation Report of Center Township, *i.e.*, Special Investigation Report B44484. The report detailed Mizen's misappropriation of funds and the means by which he accomplished and concealed his conduct. The SBOA requested that Mizen reimburse the Township for the full amount of the misappropriated funds. In addition, the SBOA described that it had "incurred additional costs in the investigation of the misappropriation of funds" and requested reimbursement from Mizen in the sum of $54,978.41. (Appellant's App. Vol. II, p. 23).

[8] On April 30, 2015, the district court entered judgment in accordance with the plea agreement and ordered Mizen to execute eighteen months in Federal Prison Camp in Terre Haute, Indiana. The district court also ordered the

payment of restitution as set forth in the plea agreement. At some point, Mizen repaid the sum of $343,541.08 to the Township.

[9] On June 17, 2015, the State filed a Complaint to Recover Public Funds against Mizen. In Count I of its Complaint, the State alleged that "[a]s a direct and proximate result of the breach of Mizen's duty to [the] Township, [the] SBOA incurred additional audit costs in the amount of $54,978.41." (Appellant's App. Vol. II, p. 15). Accordingly, the State requested a judgment in this amount. In Count II, pursuant to the CVRA, Indiana Code section 34-24-3-1, the State asserted that it was entitled to treble damages, court costs, reasonable attorney fees, and other miscellaneous costs and expenses due to the fact that Mizen's criminal offense resulted in a pecuniary loss to the State. The State requested a judgment of $1,030,623.24 (to be reduced by the amount already paid in restitution), plus court costs and reasonable attorney fees.

[10] On September 9, 2015, Mizen filed his Answer, denying that the Township suffered any pecuniary loss as a result of his conduct as he repaid the "full amount of any sums wrongfully taken from [the] Township." (Appellant's App. Vol. II, p. 31). Mizen also raised several affirmative defenses, including that the State, by its "acts or omissions or the acts or omissions of [its] agents or representatives, [has] waived [its] right to pursue any claims against [Mizen]." (Appellant's App. Vol. II, p. 31).

[11] On January 25, 2016, Mizen filed a motion for summary judgment. He asserted that the Attorney General has no statutory authority to pursue the

additional audit costs sought in Count I of the State's Complaint. He further specified that although the State requested that he pay for the additional audit costs, "the undisputed facts reveal that no costs were ever billed and an examination of the law reveals that, no matter how they are classified, neither the State, the SBOA, nor the Township is entitled to recover examination costs from . . . Mizen—especially since there is no 'amount owed.'" (Appellant's App. Vol. II, p. 38). As to Count II of the State's Complaint, Mizen argued that he "has already repaid any 'pecuniary loss', thus precluding any recovery based on 'the actual damages'—because there are no actual damages in this matter." (Appellant's App. Vol. II, p. 39). Mizen also contended that the Attorney General is only authorized to recover misappropriated funds—"not fees, penalties, or additional costs." (Appellant's App. Vol. II, p. 39). Moreover, Mizen asserted that the State failed to file its Complaint within the CVRA's two-year statute of limitations. On February 18, 2016, the State filed an objection to Mizen's summary judgment motion, along with a cross-motion for summary judgment, in which the State reiterated the claims set forth in its Complaint.

[12] On April 8, 2016, the trial court conducted a hearing on the parties' cross-motions for summary judgment. At the onset of the hearing, Mizen filed a motion requesting the trial court to take judicial notice of three prior audit reports issued by the SBOA regarding the Township: (1) Report B40189, issued on March 15, 2012, concerning the records of the Center Township Small Claims Court from January 1, 2009, to December 31, 2010; (2) Report B40567,

issued on July 13, 2012, concerning issues of Mizen's salary, compensable time, overtime, paid time off, and excessive hours worked from January 1, 2005, through December 31, 2010; and (3) Report B40568, also issued on July 13, 2012, concerning the Township's financial statements from January 1, 2009, to December 31, 2010 . Despite not having included these reports in his designated evidence, Mizen argued that they were necessary to establish that the State's claim is barred by the statute of limitations because there were financial discrepancies noted in the reports that should have given the State reason to exercise ordinary diligence in uncovering the misappropriation sooner than the audit commenced on January 22, 2014.[1] At the close of the hearing, the trial court took the matter under advisement.

[13] On April 11, 2016, the State filed an objection to Mizen's motion for judicial notice. The State conceded that the SBOA Reports B480189, B40567, and B40568 "are public documents and are readily available to the [c]ourt." (Appellant's App. Vol. II, p. 240). However, the State argued that the audit reports are irrelevant to this action because they "do not contemplate the fraud discovered, investigated, and reported by the [SBOA] in Special Investigation Report B44484." (Appellant's App. Vol. II, p. 240).

---

[1] In his appellate brief, Mizen also discusses the SBOA's Report B45431, which was filed on October 16, 2015, and which is supposedly the report for the "normal" audit that was commenced on January 22, 2014, ultimately resulting in the special investigation and Special Investigation Report B44484. (Appellant's Br. p. 16). However, SBOA Report B45431 was neither included in Mizen's designated evidence nor referenced in his motion for the trial court to take judicial notice. Therefore, we consider neither the report nor Mizen's arguments related thereto in our decision.

On April 29, 2016, the trial court denied Mizen's motion for summary judgment but granted the State's cross-motion. The trial court found that Mizen had waived his statute of limitations defense by failing to include it as an affirmative defense in his pleadings. Waiver aside, the trial court further noted that "Mizen's criminal behavior belie[d] any consideration against the State's ordinary diligence" in discovering the misappropriation sooner. (Appellant's App. Vol. II, p. 10). As to the State's contention that it was entitled to recover the incurred costs of conducting a special audit on behalf of the SBOA, the trial court agreed and awarded "[s]tatutory expenses in the amount of $54,978.41." (Appellant's App. Vol. II, p. 10). Pursuant to the CVRA, the trial court also awarded treble damages in the amount of $1,036,623.24,[2] along with reasonable attorney fees and court costs. On May 4, 2016, the trial court issued an order, summarily denying Mizen's motion to take judicial notice of SBOA Reports B480189, B40567, and B40568. The trial court also ordered that portions of the motion for judicial notice be stricken from the record.

Mizen now appeals. Additional facts will be provided as necessary.

---

[2] Although the trial court awarded $1,036,623.24 in treble damages, the State's actual damages of $343,541.08 multiplied by three is actually $1,030,623.24.

# DISCUSSION AND DECISION

## I. *Standard of Review*

Our court reviews a trial court's grant or denial of a motion for summary judgment under the same standard as the trial court—that is, summary judgment "is appropriate only if the designated evidentiary matter shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Martin v. Brown*, 716 N.E.2d 1030, 1032 (Ind. Ct. App. 1999) (citing Ind. Trial Rule 56(C)).  On appeal, our review is *de novo*; however, we consider only "the materials properly designated to the trial court, and we take all facts and draw all reasonable inferences in favor of the non-moving party." *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 331-32 (Ind. 2013). Although the trial court's issuance of specific findings and conclusions assists in our review "by giving insight into the trial court's rationale," we are not bound by these findings and conclusions.  *Id.* at 331.  We will affirm a summary judgment "if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court." *Sam & Mac, Inc. v. Treat*, 783 N.E.2d 760, 764 (Ind. Ct. App. 2003).

## II. *Statute of Limitations*

Mizen claims that the State is not entitled to summary judgment because it failed to file its claim within the applicable statute of limitations and, accordingly, is barred from recovering under the CVRA.  Statutes of limitation "are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded,

witnesses have died or disappeared, and evidence has been lost." *Russo v. S. Developers, Inc.*, 868 N.E.2d 46, 48 (Ind. Ct. App. 2007). "They are enacted upon the presumption that one having a well-founded claim will not delay in enforcing it." *Morgan v. Benner*, 712 N.E.2d 500, 502 (Ind. Ct. App. 1999), *trans. denied*. The accrual of a cause of action is a question of law, "as 'it is well-established in Indiana law that it is the courts' responsibility to determine, based on the facts of each case, when the cause of action accrues.'" *Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 639 (Ind. Ct. App. 2008) (quoting *Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 917 F.2d 278, 288 (7th Cir. 1990)). Thus, a statute of limitations defense is a proper consideration on summary judgment. *Martin*, 716 N.E.2d at 1033. If the undisputed facts establish "that the complaint was filed after the running of the applicable statute of limitations, the trial court must enter judgment for the defendant." *Id.*

[18] It is long settled that "because the substance of a claim under [the CVRA] is punitive rather than compensatory, such claims are subject to a two-year statute of limitations." *Prime Mortg. USA, Inc.*, 885 N.E.2d at 638 (internal quotation marks omitted). Furthermore, "[a]ctions under the [CVRA] are subject to the discovery rule, under which a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Id.* at 639-40 (internal quotation marks omitted). In this case, the State argues that, due to Mizen's efforts to conceal his theft, the

earliest its cause of action could have accrued was when the SBOA commenced its audit on January 22, 2014. Thus, the State asserts that its June 17, 2015 Complaint falls within the two-year statute of limitations. On the other hand, Mizen asserts that because SBOA Reports B480189, B40567, and B40568 establish that there were irregularities in the Township's finances, the State, in an exercise of reasonable diligence, should have discovered the misappropriation no later than June of 2012. Mizen insists that because the State filed its Complaint after June of 2014, it is barred.

[19] Before deciding whether the State's action is timely, we must first consider the State's assertion (and the trial court's conclusion) that Mizen has waived any claim regarding the statute of limitations by failing to include it as an affirmative defense in his Answer. With respect to affirmative defenses, Indiana Trial Rule 8(C) provides that

> [a] responsive pleading shall set forth affirmatively and carry the burden of proving: accord and satisfaction, arbitration and award, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, lack of jurisdiction over the subject-matter, lack of jurisdiction over the person, improper venue, insufficiency of process or service of process, the same action pending in another state court of this state, and any other matter constituting an avoidance, matter of abatement, or affirmative defense. A party required to affirmatively plead any matters, including matters formerly required to be pleaded affirmatively by reply, shall have the burden of proving such matters.

Our courts have generally held that the failure to raise an affirmative defense in a pleading results in waiver of the issue. *See Sullivan Builders & Design, Inc. v. Home Lumber of New Haven, Inc.*, 834 N.E.2d 129, 136 (Ind. Ct. App. 2005), *trans. denied*.

[20] Nevertheless, there is also case law that indicates that the failure to plead statute of limitations as an affirmative defense does not automatically result in a waiver. Rather, our courts have stated that "a statute of limitations defense may properly be raised by a motion for summary judgment" even if not raised in the pleadings. *Honeywell, Inc. v. Wilson*, 500 N.E.2d 1251, 1252 (Ind. Ct. App. 1986) (citing *Schideler v. Dwyer*, 417 N.E.2d 281 (Ind. 1981)), *trans. denied*. Allowing this issue to be raised in a summary judgment motion

> follows from the basic policies underlying the modern Indiana Rules of Trial Procedure. These rules are designed to avoid pleading traps and, to the greatest extent possible, ensure that cases are tried on the issues that their facts present. Thus the focus is not on the technical procedure used to raise the issue, but on the issue's legal merits.

*Id.* Moreover, there is a presumption "that issues can be raised as they, in good faith, are developed." *Id.* In order to rebut this presumption, "the party against whom the new issue is raised" may make "an affirmative showing of prejudice." *Id.* In order to demonstrate prejudice, the party must show that it "will be deprived of, or otherwise seriously hindered in the pursuit of some legal right if injection of the new issue is permitted." *Id.*

[21]     In this case, the State argued that "to bring [the statute of limitations] up now would be prejudicial to the State as it seeks to convolute the pertinent and justifiable legal issues in this case. And additionally it distracts the court from the legal merits in the case." (Tr. p. 13). Despite the delay, we decline to find prejudice because the State had ample time to prepare an argument and respond to Mizen's statute of limitations defense. Furthermore, we elect to address the issue based on our preference of deciding matters on legal merits rather than technical procedure.[3]

[22]     Mizen now relies primarily on evidence outside of the designated materials to contend that the State had either actual knowledge of Mizen's misappropriation, or that it failed to exercise reasonable diligence that could have led to the discovery of the misappropriation, between December of 2011 and June of 2012. On appeal, Mizen argues that the trial court abused its discretion by refusing to take judicial notice of the evidence purportedly supporting this claim: SBOA Reports B480189, B40567, and B40568. Indiana Evidence Rule 201(a) provides that a court may take judicial notice of "a fact that: (A) is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction, or (B) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A trial court "may take judicial notice at any stage of the

---

[3] As such, we need not address Mizen's contention that he did not waive his statute of limitations defense because by pleading the affirmative defense of waiver, he necessarily pled the statute of limitations defense as well.

proceeding" and is required to do so "if a party requests it and the court is supplied with the necessary information." Ind. Evidence Rule 201(c)-(d).

[23] As Evidence Rule 201 requires, Mizen provided the trial court with the three SBOA audit reports, which are public documents and are readily available on a website maintained by the State. Nonetheless, we find no abuse of discretion in the trial court's denial of Mizen's motion for judicial notice because SBOA Reports B480189, B40567, and B40568 are irrelevant to a determination of whether the State filed its CVRA claim within the statutory timeframe. *See, e.g.*, *Brenwick Associates, LLC v. Boone Cnty. Redevelopment Comm'n*, 870 N.E.2d 474, 478 (Ind. Ct. App. 2007) (finding that the trial court was not required to take judicial notice of irrelevant facts), *summarily aff'd in relevant part*, 889 N.E.2d 289, 290 n.4 (Ind. 2008). As the State points out, a review of SBOA Reports B480189, B40567, and B40568 "show that [the] Township did a poor job keeping its records, that certain records were missing, and that there were questions over Mizen's salary" and other benefits. (State's Br. p. 22). These audit reports did not, however, reveal any indication that Mizen was engaging in criminal conduct that would warrant further investigation. Moreover, although a trial court may take judicial notice of certain facts at any stage of the proceeding, all evidence to be considered for summary judgment purposes must be designated at the time of the filing of the summary judgment motion or response, including "matters of judicial notice." T.R. 56(C). Because SBOA Reports B480189, B40567, and B40568 were not timely designated as evidence

pursuant to Trial Rule 56(C), we find that it was appropriate for the trial court to disregard them from consideration.

[24] The undisputed, designated evidence establishes that on January 22, 2014, the SBOA commenced a normal audit of the Township, at which time, the SBOA discovered suspected misappropriation of Township funds. At that point, the SBOA began a special investigation of the time period in which Mizen stole $343,541.08. Although other audits had been performed concerning the time period in question, Mizen took steps to conceal his conduct at the time he wrote and deposited the check. Specifically, Mizen created a false invoice in the Township's computer system—indicating that check number 35453, dated June 10, 2010, in the amount of $343,541.08, was being remitted to the Treasurer of the State for items such as "document storage fees"; judicial insurance fees"; "judicial salary fees"; "court administration fees"; "public defense admin fees"; and "court fees due others." (Appellant's App. Vol. II, p. 104). In reality, Mizen wrote the check to "Attorney's General Clearing Tr" and deposited it into his own account. (Appellant's App. Vol. II, p. 22). Accordingly, the designated evidence establishes that the earliest the State knew, or in the exercise of ordinary diligence could have known, about Mizen's criminal misappropriation was during its special investigation, which stemmed from a

normal audit that began on January 22, 2014. Thus, the State's June 17, 2015 Complaint is timely, and its claim under the CVRA is not barred.[4]

### III. *Recovery of Audit Costs*

[25] Mizen next claims that the trial court erred in granting summary judgment to the State and awarding $54,978.41 in additional audit costs. The designated evidence reveals that the additional audit costs were specifically incurred in investigating Mizen's misappropriation. Furthermore, "[t]he special investigation into the misappropriation of Township funds by . . . Mizen, which led to the issuance of the Special Investigation Report [B44484], required 663.75 hours of SBOA field examiner time." (Appellant's App. Vol. II, p. 88). At the time, an SBOA field examiner's time was valued at $82.83 per hour, which "is the 'actual direct and indirect cost of performing the examination or investigation.'" (Appellant's App. Vol. II, p. 88).

[26] Mizen insists that the Attorney General, on behalf of the SBOA, has no authority to pursue the recovery of additional audit costs from Mizen. Mizen correctly asserts that, "[i]n Indiana[,] the Attorney General is a statutory officer,

---

[4] Having determined that the State's claim was filed within the applicable statute of limitations based on the discovery rule, we need not address the State's contention that Mizen is estopped under the doctrine of fraudulent concealment from arguing that the State failed to timely file its CVRA claim. Even where a statute of limitations has expired, a plaintiff may be able to proceed under the doctrine of fraudulent concealment, which "is an equitable doctrine which operates to prevent a defendant from asserting the statute of limitations as a bar to a claim where the defendant, by his own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim." *Meisenhelder v. Zipp Express, Inc.*, 788 N.E.2d 924, 931 (Ind. Ct. App. 2003) (citing *Doe v. Shults-Lewis Child & Family Servs., Inc.*, 718 N.E.2d 738, 744-45 (Ind. 1999)). The statute of limitations is tolled "until the equitable grounds cease to operate as a reason for delay." *Id.*

exercising only the authority granted by statute." *State ex rel. Steers v. Holovachka*, 142 N.E.2d 593, 602 (Ind. 1957). Pursuant to Indiana Code section 5-11-5-1, if an SBOA audit "discloses malfeasance, misfeasance, or nonfeasance in office or of any officer or employee," the Attorney General is required to "diligently institute and prosecute civil proceedings against the delinquent officer, or upon the officer's official bond, or both, and against any other proper person that will secure to the state or to the proper municipality *the recovery of any funds misappropriated, diverted, or unaccounted for*." (Emphasis added). According to Mizen, this provision only permits the Attorney General to seek recovery of the misappropriated funds, but it does not permit any "action if recovery has already been effectuated, and the statute does not authorize an action *only* for 'additional' costs or fees." (Appellant's Br. p. 26). Here, there is no dispute that Mizen repaid the $343,541.08 of misappropriated funds through his criminal restitution order.[5] Furthermore, Mizen contends that the payment of audit costs is governed by Indiana Code section 5-11-4-3(a), which provides that "[t]he expense of examination and investigation of accounts shall be paid by each municipality or entity as provided in this chapter." Thus, Mizen argues that the SBOA cannot "request payment from any individual or entity other than the municipality or entity that operates the account." (Appellant's Br. p. 26).

---

[5] For these same reasons, Mizen also contends that Indiana Code section 5-11-5-1 precludes the Attorney General from seeking exemplary damages under the CVRA. We will discuss recovery under the CVRA below.

[27] The State, however, directs our attention to Indiana Code section 5-11-5-7(c), which states that "[t]he costs of collection, including but not limited to reasonable attorney's fees, may be added to money that is owed and collected under this section. However, the costs of collection may not exceed an amount that is equal to the amount of money that is owed." According to the State, "[t]his more specific statute gives the [SBOA] authority to collect auditing costs above and beyond the normal auditing costs." (State's Br. p. 39). We disagree. The State's cited provision specifically references collection costs for money that "is owed and collected *under this section*." I.C. § 5-11-7-5(c). That section— Indiana Code section 5-11-7-5(a)—provides that the SBOA may collect: "(1) [u]npaid fines, costs, or fees that are imposed for violations of statutes defining a crime or infraction and are owed to the state or its political subdivisions[;] (2) [m]oney owed resulting from bond forfeitures . . . [; or] (3) [u]npaid user's fees incurred under a pretrial diversion agreement by a person charged with a misdemeanor, infraction, or ordinance violation." The additional audit expenses at issue do not represent costs that may be collected under Indiana Code section 5-11-7-5.

[28] Nevertheless, we still find that the plain language of Indiana Code section 5-11-5-1 provides the Attorney General with authority to recover the additional audit costs in this case. We acknowledge that Indiana Code section 5-11-4-3(a) does stipulate that the Township is required to foot the bill for "[t]he expense of examination and investigation of [its] accounts." However, as the SBOA averred in the designated evidence, the additional audit costs of $54,978.41

"were not budgeted in terms of time and resources, nor were they contemplated in advance by the SBOA or the Township. The additional audit costs were not billed to or paid by the Township." (Appellant's App. Vol. II, p. 87). Thus, if the SBOA were to issue a bill to the Township for these additional audit costs, that $54,978.41 would have to be *diverted* away from other Township use as a direct result of Mizen's malfeasance. *See* MERIAM-WEBSTER, https://www.merriam-webster.com/dictionary/divert (last visited February 16, 2017) (defining "divert" as "to turn from one course or use to another"). The Attorney General has specific authority to recover any public funds that are diverted as a result of a public employee's malfeasance. I.C. § 5-11-5-1(a). Thus, the trial court properly granted summary judgment in favor of the State on this issue.[6]

## IV. *Crime Victims Relief Act*

[29] Finally, Mizen claims that the trial court erred in granting the State's summary judgment motion based on its CVRA claim. If a person suffers a pecuniary loss as the result of a violation of Indiana Code article 35-43 (*i.e.*, the commission of theft, conversion, etc.), that person "is entitled to bring a civil action under the [CVRA] for damages in an amount not to exceed three times his actual

---

[6] Our conclusion is further supported by the fact that on July 1, 2015, after the State filed its Complaint in the present action, Indiana Code section 5-11-1-27(m) became effective, which provides that if the Attorney General institutes civil proceedings under Indiana Code section 5-11-5-1, "the attorney general shall seek, in addition to the recovery of any funds misappropriated, diverted, or unaccounted for, restitution of: (1) costs incurred by the [SBOA]; and (2) all costs and reasonable attorney's fees incurred by the attorney general; in connection with the civil proceedings."

damages, plus costs and attorney fees." *Bayview Loan Servicing, LLC v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1069-70 (Ind. Ct. App. 2016) (citing I.C. § 34-24-3-1). Although "the CVRA creates a civil remedy, its reliance on proof of a predicate criminal offense makes it inherently quasi-criminal." *Wysocki v. Johnson*, 18 N.E.3d 600, 605 (Ind. 2014). In fact, we have described the CVRA as "a punitive statute intended to deter the wrongdoer and others from engaging in similar future conduct." *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 366 (Ind. Ct. App. 2012), *trans. denied*. As a penal statute, the CVRA must be strictly construed. *Columbus Med. Servs. Org. v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 98 (Ind. Ct. App. 2009).

[30] In general, a claimant need only prove the elements of the criminal conduct by a preponderance of the evidence, but in this case, "[t]he parties agree that Mizen's misappropriation is one of the species of criminal behavior that can lead to a civil action under the CVRA." *Wysocki*, 18 N.E.3d at 606; (Appellant's Br. p. 28). Thus, Mizen's challenge on appeal revolves around the fact that he repaid the misappropriated funds of $343,541.08 to the Township pursuant to a restitution order prior to the State's filing of the present action. Mizen now insists that the State cannot recover treble damages and other costs under the CVRA because it has not suffered a "pecuniary loss." (Appellant's Br. p. 27). *See Coleman v. Coleman*, 949 N.E.2d 860, 869 (Ind. Ct. App. 2011) ("[I]f a plaintiff suffers no pecuniary loss as the result of a defendant's actions, the plaintiff is not entitled to recover . . . under the [CVRA]."). We disagree.

When Mizen stole $343,541.08 in public funds in 2010, the Township clearly suffered a pecuniary loss. The fact that Mizen subsequently paid restitution pursuant to a plea agreement that he entered into in the federal district court does not negate the fact that, for more than four years, he benefitted from his illegal conduct while simultaneously depriving the Township of the use of a substantial amount of money. As already mentioned, the purpose of the CVRA is to deter the wrongdoer and others from partaking in the same type of illicit conduct in the future. *JPMCC 2006-CIBC14 Eads Parkway, LLC*, 977 N.E.2d at 366. It would do little to deter such behavior to simply require Mizen to return the funds that were stolen.

Moreover, we agree with the State that the present case is similar to *Blankenship v. McKay*, 534 N.E.2d 243, 246 (Ind. Ct. App. 1989), in which the defendant argued that the plaintiff's claim for treble damages was barred because he had been subjected to criminal prosecution that resulted in a restitution order to the plaintiff. The *Blankenship* court found that the payment of restitution did not prevent the plaintiff from seeking treble damages in a civil suit. *Id.* Specifically, we noted that, although the plaintiff "is the beneficiary of the restitution order, it came about through criminal prosecution, a remedy elected by the State prosecutor. [The plaintiff] did not control the decision to prosecute. He, therefore, did not elect the remedy alluded to." *Id.* We concluded that "[t]o the extent that [the plaintiff] has recovered pursuant to the restitution order, he may not duplicate the recovery in a judgment for treble damages pursuant to [the CVRA]." *Id.* Therefore, we held that the plaintiff could multiply his actual

damages "by three and recover the total sum less any amount received under the restitution order." *Id.*

[33] Nonetheless, mirroring his argument that the State could not pursue the additional audit costs, Mizen also refutes that the State is entitled to summary judgment because he maintains that the Attorney General did not have the authority under Indiana Code section 5-11-5-1 to pursue treble damages as such an award would clearly exceed the amount of funds misappropriated. However, Indiana Code section 5-11-5-4 specifically provides that the Attorney General, in an action to recover misappropriated public funds, is "entitled to recover, in addition to the amount misappropriated, diverted or unaccounted for, all such penalties and interest as might be recoverable under laws other than this chapter." We find that this provision allows the Attorney General to pursue the treble damages provided by the CVRA.

[34] Finally, Mizen contends that allowing the State to recover under the CVRA would subject him to double jeopardy in violation of the Indiana Constitution and is a violation of due process. As the State points out, Mizen failed to raise his constitutional claims before the trial court. Thus, we find that he has waived his due process argument. *See McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003). However, "questions of double jeopardy implicate fundamental rights and, as such, may be raised for the first time on appeal, or even by this court *sua sponte*." *Ellis v. State*, 29 N.E.3d 792, 797 (Ind. Ct. App. 2015), *trans. denied*. "Whether convictions violate double jeopardy is a pure question of law," so our review is *de novo*. *Id.*

Pursuant to Article 1, Section 14 of the Indiana Constitution, "[n]o person shall be put in jeopardy twice for the same offense."

[35] Here, Mizen does not contend that he has multiple convictions that run afoul of double jeopardy. Rather, he insists that because he has paid restitution in full, any damages owed under the CVRA are purely punitive, with no compensatory purpose, thus subjecting him to a second punishment "based upon the same crime for which [he] was previously prosecuted." (Appellant's Br. p. 30). We disagree. Our court has previously held that "possible or actual subjection to criminal prosecution does not bar treble damages recoverable under [the CVRA]." *Blankenship*, 534 N.E.2d at 245. The treble damages awarded in this case are intended to both compensate the State's actual loss and deter Mizen from engaging in the same conduct in the future.

[36] Accordingly, we conclude that the State is entitled to recover no more than three times its actual damages. Because Mizen has already paid $343,541.08 in restitution, the trial court's treble damages award of $1,030,623.24 should be reduced by the amount paid. Therefore, we remand for the trial court to reduce its judgment under the CVRA to $687,082.16, plus reasonable attorney fees and costs.

## CONCLUSION

[37] Based on the foregoing, we conclude that the trial court properly granted summary judgment to the State because it filed its CVRA claim within the two-year statute of limitations based on the discovery rule, and the State is entitled

to recover, as a matter of law, the $54,978.41 in additional audit costs that were expended, along with treble damages under the CVRA (as reduced by the restitution already paid) in the amount of $687,082.16, plus reasonable attorney fees and costs. [7]

[38] Affirmed in part, reversed in part, and remanded.

[39] Crone, J. and Altice, J. concur

---

[7] We note that Mizen appeals both the trial court's denial of his motion for summary judgment, as well as the trial court's entry of summary judgment in favor of the State. With the exception of the statute of limitations issue raised in Mizen's motion, both parties rely on the same remaining issues in claiming that they are entitled to summary judgment—advocating the opposite sides of arguments relating to the incurred special audit costs of $54,978.41 and treble damages under the CVRA of $1,030,623.24. Thus, by concluding that the trial court properly granted summary judgment in favor of the State, we necessarily conclude that the trial court properly denied Mizen's summary judgment motion.