

FILED

Aug 28 2019, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Alice M. Morical
Michael R. Limrick
Evan D. Carr
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Paul L. Jefferson
McNeely Stephenson
Indianapolis, Indiana

Grant M. Reeves
Barada Law Offices LLC
Rushville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

The City of Lawrenceburg, Indiana, the Mayor of the City of Lawrenceburg in his official capacity, and The Common Council of the City of Lawrenceburg in their official capacities,

*Appellants-Defendants,*

v.

Franklin County, Indiana, and The Franklin County Board of Commissioners in their official capacities,

*Appellees-Plaintiffs*

August 28, 2019

Court of Appeals Case No. 19A-PL-263

Appeal from the Decatur Superior Court

The Honorable Matthew D. Bailey, Judge

Trial Court Cause No. 16D01-1702-PL-89

**Baker, Judge.**

The City of Lawrenceburg (Lawrenceburg) entered into an agreement with Franklin County (Franklin), pursuant to which Lawrenceburg would share its gaming tax revenue with Franklin by making annual payments of $500,000. In 2014, Lawrenceburg stopped making those payments. Franklin sued for breach of contract and the trial court entered summary judgment in its favor. Lawrenceburg appeals, raising the following arguments: (1) the trial court erroneously determined that it had waived its defenses; (2) the agreement is void by statute; and (3) there are genuine issues of material fact regarding consideration, Franklin's performance of its obligations, and the duration of the agreement. We hold that Lawrenceburg did not waive its defenses and that the agreement is void by statute. Consequently, we reverse and remand with instructions to enter judgment in favor of Lawrenceburg.

# Facts[1]

As the home dock of a riverboat casino, Lawrenceburg receives a percentage of Gaming Tax Revenue[2] collected by the State each year. In 2005, Lawrenceburg created a revenue sharing program, pursuant to which it shared some of its Gaming Tax Revenue with surrounding counties, including Franklin.

---

[1] We held oral argument in Indianapolis on July 22, 2019. We thank counsel for both parties for their superior written and oral presentations.

[2] Gaming Tax Revenue, as defined by the agreement between the parties, "is the total amount received by [] Lawrenceburg from the combined incomes of both the wagering taxes and admissions taxes" under Indiana Code sections 4-33-13-1 to -6 ("Wagering Tax Revenue") and Indiana Code sections 4-33-12-1 to -6 ("Admissions Tax Revenue"), respectively. Appellants' App. Vol. II p. 100.

On January 17, 2006, Lawrenceburg and Franklin entered into a "Special Revenue Sharing Agreement" (the Agreement). Appellants' App. Vol. II p. 100. The recitals of the Agreement indicate that it was made "in consideration of the mutual covenants and promises contained herein[.]" *Id.* The Agreement required Lawrenceburg to make annual $500,000 payments to Franklin; those payments were to be made "from the net amount of Gaming Tax Revenues Lawrenceburg receives on an annual basis." *Id.* at 101. The Agreement "is contingent upon Lawrenceburg's continued receipt of Wagering Tax Revenue . . . ." *Id.* Both entities agreed that they had "the necessary power and authority to enter into this Agreement" and that they would "cooperate with each other in a marketing plan to promote tourism and development in each area." *Id.*

After the Agreement was executed, the Lawrenceburg Common Council appropriated $500,000 in 2006 for Lawrenceburg's first payment to Franklin. Lawrenceburg continued to make annual $500,000 payments through 2013.[3] According to Lawrenceburg, in 2013, it decided to stop making payments because of increased competition from nearby Ohio casinos and because of a projected 30% loss in its Gaming Tax Revenue for the following year.[4]

---

[3] It is unclear from the record whether, in the years following 2006 in which Lawrenceburg made payments to Franklin, Lawrenceburg appropriated funds for the payments.

[4] Lawrenceburg actually realized a 49.1% loss in Gaming Tax and "true up" tax revenues in 2014. Appellants' App. Vol. II p. 107.

According to Lawrenceburg, Franklin did nothing to earn the annual payments. It did not provide any services or goods, nor did it incur any non-trivial expenses in connection with the Agreement.

Franklin explains the reason for the Agreement, as well as its own obligation, as follows:

> In 2006, the issue of the distribution of local riverboat gaming monies was receiving special scrutiny by the Indiana Gaming Commission and the Indiana General Assembly. . . . Lawrenceburg was rightfully concerned with the possibility of seeing its wagering and admissions taxes lessening or ending completely, as almost all of its revenue for development remained at the local level, which conflicted with the policies of riverboat gaming. In an effort to keep as much money as possible, to comply with its statutory requirements, and to avoid potential difficulty with state lawmakers and governmental regulators, Lawrenceburg approached Franklin County so it could accurately represent that its economic development activities were, in fact, regional in scope.
>
> . . . Lawrenceburg identified an opportunity to further the footprint of its economic development by utilizing adjacent counties, including Franklin County, and in turn persuade the legislature to keep the wagering and admissions revenue flowing. In that effort to ensure that monies kept flowing to Lawrenceburg, the City of Lawrenceburg and Franklin County entered into [the Agreement], and a separate grant program, at Lawrenceburg's invitation. This regional partnership was shown to and apparently had the intended effect of appeasing regulators and legislators looking at the issue. In exchange for the Agreement, Franklin County publicly supported Lawrenceburg's riverboat revenue program. That support was effective, as Lawrenceburg kept its revenue.

Appellees' Br. p. 11-12 (internal citations omitted). In fashioning this explanation, Franklin does not cite to any specific documents or evidence related to this case or the Agreement; instead, it cites statutes and an unrelated case. It does direct our attention to two letters drafted by Franklin County:

- On January 23, 2006, the Franklin County Board of Commissioners sent a letter thanking Lawrenceburg for its "contribution" of $500,000 and stating that Franklin supported Lawrenceburg in its "endeavors with your riverboat revenue." Appellants' App. Vol. II p. 142.
- On January 28, 2006, the president of the Franklin County Council sent a letter thanking Lawrenceburg for including Franklin in its Revenue Sharing Program. The letter acknowledges that the Agreement will remain in effect only so long as Lawrenceburg "continues to enjoy financial stability and a steady flow of revenue. We also understand that this revenue flow would be subject to the decisions made by the Indiana State Legislature. We, the members of the County Council pledge to support your endeavor by contacting the necessary members of the State Legislature and extend to them how important this Revenue Sharing program is to all of the 9 surrounding counties included in the agreement." The letter notes that the "sharing of this revenue with us and the other counties is truly a wonderful example of a neighbor helping others." *Id.* at 145.

[7]    On November 18, 2015, Franklin sued Lawrenceburg for breach of contract. In Lawrenceburg's answer, it did not raise any affirmative defenses. Franklin moved for summary judgment, arguing that the Agreement was a valid and enforceable contract that could be terminated only if there was a complete failure of Lawrenceburg's Gaming Tax Revenue stream. Lawrenceburg filed a cross-motion for summary judgment, arguing that the Agreement was void pursuant to Indiana Code section 36-4-8-12(b) because it purported to obligate the city to pay money that had not been appropriated. It also argued that the

Agreement was unenforceable because it was not supported by consideration and did not have a finite durational term. Following briefing and a hearing, the trial court entered summary judgment in favor of Franklin on August 10, 2018. In pertinent part, it found and held as follows:

4. The Agreement acknowledges adequate consideration.

\*\*\*

9. The Wagering Tax revenue that is shared pursuant to the Agreement is appropriated to Lawrenceburg by the State of Indiana. These funds are State money collected pursuant to a State tax.

\*\*\*

12. Annually, Lawrenceburg has continued to receive wagering tax revenue in amounts exceeding $500,000.

13. Franklin County has fully performed under the Agreement.

14. There are no genuine issues of material fact.

15. The Agreement has a sufficient term of duration. The duration of the Agreement is the period of time that Lawrenceburg continues to receive Wagering Tax revenue in an amount sufficient to make the agreed payment to Franklin County.

16. The Agreement is a valid and enforceable contract.

17. Lawrenceburg has breached the Agreement, and Franklin County has suffered damages.

18. Pursuant to Indiana Trial Rule 8(A), Lawrenceburg's failure to plead illegality and lack of consideration results in waiver of those issues.

19. The Wagering Tax revenue funds shared under the Agreement are appropriated by the State of Indiana and paid to Lawrenceburg pursuant to IC 4-33-13-6.

20. IC 4-33-13-6(b) specifically allows units of local government to enter into agreements to share Wagering Tax revenue with other units of local government.

21. Lawrenceburg's argument that the contract is void because it requires the payment of public funds beyond the amount appropriated at the time of the execution of the Agreement is without merit.

Appealed Order p. 1-3. Following a hearing, on January 23, 2019, the trial court ordered Lawrenceburg to pay Franklin damages in the amount of $2.5 million plus prejudgment interest, for a total award of approximately $3.1 million. Lawrenceburg now appeals.

## Discussion and Decision

[8] Lawrenceburg argues that the trial court should not have granted summary judgment in favor of Franklin. Instead, Lawrenceburg claims that summary judgment should have been granted in its own favor or, alternatively, that there are genuine issues of fact rendering summary judgment improper.

Our standard of review on summary judgment is well established:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

The interpretation of a statute is a question of law to which we apply a de novo standard of review. *Kaser v. Barker*, 811 N.E.2d 930, 932 (Ind. Ct. App. 2004).

# I.  Waiver

The trial court found, and Franklin continues to argue on appeal, that Lawrenceburg has waived its argument that the Agreement is void by statute. According to Franklin, this argument amounts to an affirmative defense that should have been, but was not, pleaded in Lawrenceburg's answer.

Indiana Trial Rule 8(C) provides that a responsive pleading "shall set forth affirmatively and carry the burden of proving" affirmative defenses, including "illegality." Here, Lawrenceburg's answer did not assert any affirmative defenses, nor did it ever seek to amend its answer to add any. Instead, it argued

that the Agreement was void by statute for the first time in the summary judgment proceedings. The parties disagree as to whether Lawrenceburg's argument that the Agreement is void by statute qualifies as the affirmative defense of illegality. As explained below, we need not resolve that issue to find that no waiver occurred here.

[13] Generally, courts of this State have a strong preference for deciding matters on the merits as opposed to legal technicalities. *E.g.*, *Mizen v. State ex rel. Zoeller*, 72 N.E.3d 458, 466-67 (Ind. Ct. App. 2017), *trans. denied*. Therefore, even if we assume solely for argument's sake that Lawrenceburg's argument that the Agreement is void by statute amounts to the affirmative defense of illegality as set forth in Indiana Trial Rule 8(C), we will consider whether Franklin was prejudiced by the sequence of events in this case.

[14] In *Mizen*, this Court considered a defendant who asserted a statute of limitations defense—also an affirmative defense explicitly included in Trial Rule 8(C)—for the first time at summary judgment. The trial court found that the defense was waived for failure to plead it, but we reversed:

> [T]here is a presumption that issues can be raised as they, in good faith, are developed. In order to rebut this presumption, the party against whom the new issue is raised may make an affirmative showing of prejudice. In order to demonstrate prejudice, the party must show that it will be deprived of, or otherwise seriously hindered in the pursuit of some legal right if injection of the new issue is permitted.

*Id.* at 467 (internal quote marks and citations omitted).

[15]     Here, as in *Mizen*, Franklin had ample time to, *and did*, respond to Lawrenceburg's arguments made at summary judgment. Franklin designated no evidence showing prejudice from the timing of Lawrenceburg's arguments, nor could it, given that the argument that the Agreement was void by statute is a purely legal argument that did not necessitate a fully developed factual record to address. Franklin's argument that the only way to raise an affirmative defense is through an answer or motion to amend an answer is overly technical and fails to account for our predilection to resolve issues on their merits when possible.[5]

[16]     Here, where the expenditure of municipal funds is at the heart of the matter, Franklin cannot claim to have been unfairly surprised by Lawrenceburg's argument that Indiana Code section 36-4-8-12(b) applies, nor should this Court be deprived of addressing that issue. Given that Franklin cannot show that it was deprived of, or otherwise seriously hindered in the pursuit of, some legal right, we find that the timing of Lawrenceburg's void by statute argument did not bar its introduction into the proceedings. In other words, Lawrenceburg did not waive the argument, and the trial court erred by concluding otherwise.

---

[5] Franklin maintains that we routinely consider waiver under Trial Rule 8(C) without any discussion of prejudice. But in the cases cited by Franklin for this proposition, prejudice was not discussed because it either was not argued, was not raised until after judgment was entered, or was not necessary to find that the amendment should have been allowed. *See* Appellees' Br. p. 16-17. In any event, given that Franklin does not argue (nor could it) that we are prohibited from considering prejudice with respect to a waiver argument, it is our prerogative to do so and here, we so choose.

## II. Void By Statute

[17] Indiana Code section 36-4-8-12(b) (section 12(b)) provides that "a city department, officer, or employee may not obligate the city to any extent beyond the amount of money appropriated for that department, officer, or employee. An obligation made in violation of this section is void." *See Bd. of Pub. Works v. L. Cosby Bernard & Co.*, 435 N.E.2d 575, 577 (Ind. Ct. App. 1982) (observing that section 12(b) "is unambiguous in its condemnation of any attempt to bind a municipality in the absence of an appropriation").

[18] Franklin argued, and the trial court appeared to agree, that because *the State* appropriated money for the Gaming Tax Revenue to be provided to Lawrenceburg, it was not then required for *Lawrenceburg* to also appropriate—or encumber—the money to be paid to Franklin. But we agree with Lawrenceburg that this conclusion is based on a fundamental misunderstanding of the process:

> The State appropriates and provides Gaming Tax Revenue to Lawrenceburg's fiscal officer—at which point the money may be deposited into either the city's general fund, a riverboat fund established by statute, or both. Wherever it is deposited, the money then "may be used for any legal or corporate purpose of the" city. . . . Thus, once received from the State, Gaming Tax Revenue is Lawrenceburg's to spend—subject to the statutorily-required appropriations process.

Appellants' Br. p. 18-19 (internal footnote and citations omitted). In other words, "[t]he State's appropriation transfers funds into only Lawrenceburg's

accounts. For those funds to leave Lawrenceburg's hands requires further action by the city council: an appropriation." Reply Br. p. 7.

[19] The trial court found it significant that the legislature has explicitly allowed agreements between municipalities to share gaming revenues. Appealed Order p. 3 (citing Ind. Code § 4-33-13-6 (the revenue sharing statute)). Initially, we note that, in relevant part, the revenue sharing statute merely declines to prohibit the recipient of gaming funds from sharing the revenue with other units of government. *Id.* at -6(b). We interpret this to mean that Lawrenceburg may share its gambling revenue with Franklin without Franklin having to provide actual consideration in the form of goods or services.

[20] Moreover, we agree with Lawrenceburg that the statutes are easily harmonized: the revenue sharing statute grants Lawrenceburg the authority to enter into revenue sharing agreements, and section 12(b) prescribes the method for doing so. "If that method—appropriation of payments—is not followed, then the revenue sharing agreements (like any other municipal contract) are void." Appellants' Br. p. 19. If Lawrenceburg paid "$500,000 per year of its Gaming Tax Revenue . . . , perpetually into the future and without the oversight and appropriation of its legislative body," the city would be in violation of multiple Indiana statutes governing municipal contracts and spending. *Id.* at 20.

[21] Franklin argues, essentially, that the revenue sharing statute operates as an exception to section 12(b). According to Franklin, funds that are incorporated into a revenue sharing agreement need not be appropriated by the

municipalities. We do not find this argument compelling. Had the General Assembly intended the revenue sharing statute to be an exception to the appropriation requirement of section 12(b), it could have—and would have— explicitly said so. *Cf. White River Conservancy Dist. v. Commw. Eng'rs, Inc.*, 575 N.E.2d 1011, 1015 (Ind. Ct. App. 1991) (observing that the public contract at issues would otherwise be "void and contrary to law" because the municipality did not appropriate funds to cover its costs but finding that a statutory exception under I.C. § 36-1-12-3.5 allowed contracts to be entered into without an appropriation of funds for the services at issue, so the contract was valid). Because the legislature did not indicate that the revenue sharing statute operates as an exception to section 12(b), we must harmonize the statutes as described above.

[22] There are good public policy reasons for requiring municipalities to appropriate all necessary funds before entering into contracts. First, this process enables public comment and involvement, shedding needed sunlight onto municipalities as they decide how to spend their funds. Specifically, the State disburses gambling revenue one year at a time. When the funds arrive, they belong to the municipality—here, Lawrenceburg—and how those funds shall be spent is subject to an annual budget process requiring public notice and a public decision by the City Council to appropriate the funds. *See* I.C. § 36-4-8-12(b) (stating that an "obligation made in violation of this section is void").

[23] Second, this process prevents one administration from binding the next administration in perpetuity. Were we to accept Franklin's interpretation of the

revenue sharing agreement, the 2006 Lawrenceburg government could require the 2056 Lawrenceburg government to spend $500,000 annually on this agreement—even if the priorities of the citizens and government had changed, even if the City's budget had been dramatically altered, even if life as we know it were fundamentally different. We simply cannot countenance such a result.

[24] Third, if Franklin's interpretation were correct, municipalities would be free to contract away funds that they have not yet received—and do not know (1) whether they will continue to receive them from year to year, or (2) if they do receive the funds, how much they will receive. In the very different context of dissolution of marriages, we have held that a retirement plan held by one spouse cannot be divided as a marital asset unless the spouse has a present vested interest in the plan. *E.g.*, *Bingley v. Bingley*, 935 N.E.2d 152, 155-56 (Ind. 2010). Here, likewise, Lawrenceburg may not expend funds that it has not appropriated or contract to appropriate, encumber, or expend anticipated revenue in which it does not have a present vested interest.

[25] The 2006 Lawrenceburg government was free to enter into a revenue sharing agreement with Franklin. It was even free to make that agreement last for a lengthy number of years. It was simply required, pursuant to section 12(b), to appropriate *all* the funds required to fulfill the agreement at the time it was executed. Thus, had Lawrenceburg intended to pay Franklin $500,000 annually for ten years, it would have had to have encumbered $5 million at the time the agreement was executed. In that way, while the city would have had to honor the agreement for its duration, all the necessary funds would have

been accounted for at the outset, meaning that future administrations would not be on the financial hook.

[26]     Unfortunately, that is not what occurred in this case.  It is undisputed that at the time the Agreement was executed, no money had been appropriated by Lawrenceburg to fulfill it.  Shortly thereafter, Lawrenceburg appropriated $500,000 for the first year's payment, but that action cannot save a contract that was void ab initio.[6]  Because the Agreement was void from the outset, any payments made by Lawrenceburg to Franklin thereafter were gratuitous, and Franklin has no legal right to demand their continuation or to receive damages for their cessation.[7]  Therefore, the trial court should have entered summary judgment in favor of Lawrenceburg.[8]

---

[6] It is well settled that an otherwise invalid public contract cannot be rescued and ratified by the subsequent conduct of the parties.  *See Miller v. City of Evansville*, 244 Ind. 1, 5, 189 N.E.2d 823, 825 (1963).

[7] If Franklin had rendered services to Lawrenceburg over the years for which it was not compensated, it would, in theory, be entitled to quantum meruit compensation.  But it has never made that argument, nor does the record suggest that it rendered any services beyond writing letters in 2006 and providing generic public support.

[8] Franklin asks that, rather than direct that judgment be entered in favor of Lawrenceburg, we remand so that it can be determined whether the Gaming Commission relied on the Agreement in allowing Lawrenceburg to keep its license.  If the Agreement is a term and condition of a gaming license, Lawrenceburg did not have the authority to unilaterally terminate or alter it.  *City of E. Chi. v. E. Chi. Second Century, Inc.*, 908 N.E.2d 611, 623-24 (Ind. 2009).  But this argument misses the point—the Agreement was void ab initio.  Whether this result affects Lawrenceburg's gaming license is a matter for the Gaming Commission to consider.  The resolution of that issue does not change our conclusion here that the Agreement was void and, as a result, Franklin does not have the right to enforce it.

The judgment of the trial court is reversed and remanded with instructions to enter final judgment in favor of Lawrenceburg.

Najam, J., concurs.
Robb, J., concurs in part and dissents in part with a separate opinion.

| | |
|---|---|
| The City of Lawrenceburg, Indiana, the Mayor of the City of Lawrenceburg in his official capacity, and The Common Council of the City of Lawrenceburg in their official capacities, | Court of Appeals Case No. 19A-PL-263 |
| *Appellants-Defendants,* | |
| v. | |
| Franklin County, Indiana, and The Franklin County Board of Commissioners in their official capacities, | |
| *Appellees-Plaintiffs,* | |

**Robb, Judge, concurring in part and dissenting in part.**

I agree with Part I of the majority opinion holding that Lawrenceburg has not waived its argument that the Agreement was void by statute. And I agree with much of what the majority says regarding appropriations in Part II. However, I disagree that *this* agreement in *this* context is void ab initio and therefore dissent from the majority's resolution.

[29] The legislative intent behind allowing riverboat gambling is "to benefit the people of Indiana by promoting tourism and assisting economic development." Ind. Code § 4-33-1-2. To that end, and in the interest of assisting economic development in the state as a whole and not just in the specific locations allowed to engage in riverboat gambling, Indiana Code section 4-33-13-6(b) provides that local governments receiving wagering tax revenue are not prohibited from entering into agreements with other units of local government to share the revenue they have received. And this is exactly what Lawrenceburg has done. The designated evidence shows Lawrenceburg approached Franklin County in December 2005 with the following offer:

> The City of Lawrenceburg, with the assistance of Senator Nugent and Representative Bischoff, is preparing a Revenue Sharing program for year 2006 that involves [Franklin County]. First, we are proposing a $10,000,000 economic development grant program that will serve nine (9) surrounding counties including Franklin. In addition, we would like to develop a direct revenue sharing arrangement with Franklin County. We are proposing a $500,000 contribution for 2006 and each year thereafter for [Franklin] County to use for general purposes.

> The inauguration of these programs this year, and their continuation into the future, will depend upon Lawrenceburg continuing to enjoy financial stability. . . .

> * * *

> We look forward to working with your County Council to develop a long term relationship that improves the quality of life in Franklin County and beyond.

Appellant's App., Vol. II at 141. Franklin County graciously accepted Lawrenceburg's offer of a "$500,000 contribution for 2006 and thereafter[,]" *id.* at 142, and acknowledged both that the "sharing of this revenue with us and the other counties is truly a wonderful example of a neighbor helping others" and that the "agreement can only remain in place if the City of Lawrenceburg continues to enjoy financial stability and a steady flow of revenue[,]" *id.* at 145. For eight years, Lawrenceburg paid Franklin County $500,000 each year – $4,000,000 total – until suddenly it decided the Agreement was void ab initio because it did not comply with Indiana Code section 36-4-8-12(b).

[30] I have several problems with this position. First, this cannot be the result the legislature intended. In allowing revenue sharing and encouraging economic development across a broad base, the legislature had to anticipate agreements such as the one at hand. If revenue sharing agreements are subject to Indiana Code section 36-4-8-12(b), then the terms of such agreements would have to include a fixed dollar amount for a fixed number of years *and* the total amount would have to be appropriated and set aside in a separate fund at the outset.[9] If a local government had that kind of money, it would not need the economic boost provided by gaming revenue. Under Lawrenceburg's position, the ability

---

[9] At oral argument, the parties were asked whether it would have been better had the Agreement provided for Franklin County to have received a percentage of the wagering tax revenues. This would in fact be a worse situation because even if the Agreement included a fixed term of years, it would be impossible to know the amount to be paid under the Agreement in advance.

to craft an agreement that is in harmony with *both* the appropriations statute and the purpose behind the revenue sharing statute is so unlikely as to be a virtual impossibility – and clearly the legislature intended for it to be possible. We must presume the legislature intended logical application of the revenue sharing provision, *see Piotrowski v. State*, 3 N.E.3d 1051, 1054 (Ind. Ct. App. 2014), but the majority's adoption of Lawrenceburg's argument on this issue makes no logical sense.

[31] Second, not only can this result not be what the legislature intended, but it is clearly not what *Lawrenceburg* intended, either. The offer it made to Franklin County was to include Franklin County in an economic development grant program with other surrounding counties *and also* to create an ongoing direct revenue sharing agreement with Franklin County. *See* Appellant's Appl, Vol. II at 141. Thus, Lawrenceburg's assertion that every payment after the first year was in the nature of a grant rather than a payment under the Agreement is disingenuous, as the Agreement and the grant program are two separate things and Franklin County was invited to participate in *both*. Moreover, if Lawrenceburg is correct that the Agreement was void ab initio, then it was just *gifting* $500,000 per year to Franklin County while requiring nothing from Franklin County. At least under the Agreement, Franklin County was obligated to cooperate in promoting tourism and development in the area.[10]

---

[10] In its brief, Lawrenceburg raised the issue that the Agreement was not supported by consideration. Although the majority does not address that issue, and I do not believe it is necessary to discuss it at length

[32]     Finally, it is unclear whether Lawrenceburg actually did go through the appropriations process each year to account for the $500,000 it paid to Franklin County from 2006 through 2013. Lawrenceburg stated in its motion to reconsider the grant of summary judgment to Franklin County that Lawrenceburg made appropriations through 2013, *see* Appellant's App., Vol. II at 150, but stated at the oral argument that the payments after the first year were entirely gratuitous. Regardless, under Lawrenceburg's argument, even the first year's payment was gratuitous because although $500,000 was appropriated for that year, the total sum for the entire length of the Agreement was not appropriated and Lawrenceburg was *never* obligated by the Agreement to give Franklin County money. Lawrenceburg asserts the purpose of section 36-4-8-2(b) is to further the "vitally important policy" of "protecting the public by preventing public officials from contractually obligating a city to pay money without the oversight of its legislative body[.]" Brief of Appellants at 12. If Lawrenceburg's position is correct, then it extended an offer and entered into a contract it should have known was illegal from the start, and yet it paid out $4,000,000 under that illegal contract, in the process doing a poor job of protecting its citizens from fiscal overreaching.

[33]     Here, the Agreement was for Lawrenceburg to share its wagering tax revenues with Franklin County in the amount of $500,000 for as long as Lawrenceburg

---

herein, I do note that under Lawrenceburg's argument that the Agreement was void ab initio, it conceded it essentially gave the money to Franklin County for no reason, which would have been an irresponsible use of Lawrenceburg's funds.

received at least that much in wagering tax revenue.[11]  The legislature clearly contemplated such an agreement in enacting Indiana Code section 4-33-13-6(b).  Applying section 36-4-8-12(b) to void the Agreement is illogical and contrary to legislative intent.  I would affirm the trial court's grant of summary judgment to Franklin County.[12]

---

[11] As Franklin County pointed out at the summary judgment hearing, "a contract with [a] municipality is meaningless if they choose not to appropriate funds." Transcript, Volume 2 at 18. Lawrenceburg conceded at the oral argument that failing to appropriate a sufficient amount at the outset of a contract can be a way to avoid a contract later. In other words, in this case, Lawrenceburg is – many years after the fact – using the appropriations statute as a way to avoid an agreement it participated in for eight years but no longer wishes to acknowledge.

[12] Because this is specific to statutorily allowed revenue sharing of riverboat wagering taxes between local governments, I do not believe this result would open the floodgates to agreements circumventing the appropriations requirement. Once in receipt of the funds, properly appropriating the funds before spending them is required.