Adrienne WEATHERSBY, and Mortgage Electronic Registration Systems, Inc., Appellants–Defendants,

v.

JPMORGAN CHASE BANK, N.A., Successor by Merger to Bank One, N.A., Appellee–Plaintiff.

No. 45A03–0809–CV–450.

Court of Appeals of Indiana.

May 21, 2009.

Rehearing Denied July 22, 2009.

Gregory A. Kahre, Evansville, IN, Attorney for Appellant.

Scott J. Fandre, Wendy K. Walker–Dyes, Baker & Daniels, LLP, South Bend, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Adrienne Weathersby and Mortgage Electronic Registration Systems, Inc. ("MERS") appeal the trial court's grant of summary judgment to JPMorgan Chase Bank, N.A., successor by merger to Bank One, N.A. ("Chase"). Weathersby and MERS raise five issues, which we consolidate and restate as whether the trial court erred by finding that Chase's mortgage was valid and that Weathersby's deed and MERS's mortgage were invalid. We reverse and remand.

This complex real estate dispute concerns a determination of ownership to a piece of property in Lake County for which multiple chains of title exist. Chase claims that Bessie Lewis is the valid owner of the property and that it holds a valid mortgage, while Weathersby claims that she is the valid owner of the property and MERS holds a valid mortgage. The relevant facts as designated by the parties follow.

We begin with the chain of title leading to Chase's mortgage. On June 17, 1997, Mirko and Stana Shesto conveyed property commonly known as 5285 Adams Street, Gary, Indiana ("Property") to the Blair Family Trust through a warranty deed, which was recorded in the Lake County Recorder's Office on June 25, 1997. The Blair Family Trust then transferred the Property to the 5285 Adams Trust with a quitclaim deed dated October 8, 1998, and recorded October 13, 1998. That deed was prepared and signed by attorney Michael Delfine.[1] Delfine, as trustee of the 5285 Adams Trust, then transferred the Property to Tony Blair with a trustee's deed dated June 9, 1999, and recorded June 17, 1999. Tony Blair then transferred the Property back to the 5285 Adams Trust with a quitclaim deed dated and recorded on July 19, 1999.[2] However, Tony Blair also transferred the Property to Bessie Lewis by warranty deed dated November 23, 1999, and recorded on January 20, 2000. Lewis gave Chase a mortgage on the Property on November 23, 1999, and the mortgage was recorded on January 20, 2000.

We next consider a second chain of title leading to Weathersby and MERS's mortgage. Again, we first note that, on June 17, 1997, the Shestos conveyed the Property to the Blair Family Trust through a warranty deed, which was recorded on June 25, 1997. Delfine, as trustee of the Blair Family Trust, transferred the Property by quitclaim deed to Financial Help and Consulting Services ("FHCS") on July 24, 1998. However, the quitclaim deed was not recorded until November 13, 1998, which was after the quitclaim deed discussed above from the Blair Family Trust

to the 5285 Adams Trust, which was recorded on October 13, 1998. On March 29, 1999, FHCS conveyed the Property by corporate warranty deed back to the Blair Family Trust, and the deed was recorded on April 9, 1999. On August 4, 1999, Delfine, as trustee of the Blair Family Trust, gave a mortgage on the Property to Harjit Sahi as security for payment of a promissory note in the amount of $37,440.80, which mortgage was recorded on April 9, 1999.

Sahi then in May 2003 filed a complaint to foreclose the mortgage and obtained a judgment against the Blair Family Trust in September 2004. The Property was sold at a sheriff's sale, and Sahi obtained a sheriff's deed to the Property on March 4, 2005. Sahi transferred the Property to Weathersby by warranty deed dated May 6, 2005, and recorded May 26, 2005. Weathersby granted PHH Mortgage Services a mortgage on the Property on May 25, 2005, which was also recorded on May 26, 2005. On July 20, 2005, PHH Mortgage Services assigned the mortgage to MERS.

On December 5, 2006, Chase filed a declaratory judgment complaint against Weathersby and MERS, seeking a declaration that the Weathersby deed and the MERS mortgage were invalid because they were recorded outside the proper chain of title. In May 2007, Chase filed an amended complaint for declaratory judgment against Weathersby, MERS, and the 5285 Adams Trust. Chase alleged that the 5285 Adams Trust had "no estate, right, title, lien, claim or interest in the Property," that Lewis owned the Property, and that its mortgage was valid. Appellant's

---

1. On October 1, 2002, the Indiana Supreme Court accepted Delfine's resignation from the bar of this State, and attorney disciplinary proceedings against Delfine were dismissed as moot. *In re Delfine,* 775 N.E.2d 680 (Ind. 2002).

2. This document was also prepared by Delfine.

Appendix at 117. 5285 Adams Trust failed to answer the amended complaint, and a default judgment was granted to Chase against the 5285 Adams Trust.

Chase then filed a motion for summary judgment, which the trial court granted as follows:

\* \* \* \* \* \*

10. The 5285 Adams Trust, from which the interests in the Property of its mortgagor Lewis and [Chase] emanate, won the race to the courthouse in 1998 with its deed from the Blair Family Trust and recorded it prior to the deed to FHCS, from which the interests of Weathersby and MERS emanate. It does not matter that the FHCS deed was of record when [Chase] searched its mortgagor Lewis' chain of title because [Chase] is claiming under and through the title emanating from the first deed recorded from the mutual remote grantor.

11. When [Chase] conducted a title search of the property, it would not have discovered the deed from the Blair Family Trust to FHCS recorded November 13, 1998, one month after the deed to the 5285 Adams Trust in its mortgagor Lewis' chain of title because the name of the Blair Family Trust would not have been searched in the index after the conveyance to the 5285 Adams Trust was discovered. Likewise, [Chase] would not have discovered any of the transactions thereafter, including the deed back to the Blair Family Trust, the mortgage to Sahi, the sheriff's deed to Sahi after the foreclosure, nor the deed to Weathersby along with her MERS Mortgage.

12. *Bank of New York v. Nally,* 820 N.E.2d 644 (Ind.2005) only recognizes a duty to search the mortgagor-mortgagee index back to the date of the deed, and not the date of its recording, in order to locate mortgages recorded with the gap. It *does not* apply to deeds so as to provide constructive notice of a deed [, which] dates prior to but recorded after the first deed out from a mutual grantor. *Id.* (emphasis added).

13. Because the claimed interests of Weathersby and MERS were recorded outside the Lewis chain of title, [Chase] cannot be deemed to have constructive notice of their existence and is therefore protected by the recording statutes as a bona fide purchaser for value without notice of a legal defect.

14. When Weathersby and MERS conducted a title search, they would have first discovered the conveyance from the Blair Family Trust to the 5285 Adams Trust, from which the interests of Lewis and [Chase] arise, which was recorded on October 13, 1998, prior to the deed from the Blair Family Trust to FHSC recorded on November 13, 1998, from which their own interests arise.

15. Because the interests of Lewis and [Chase] would be found within the Weathersby chain of title, Weathersby and MERS had constructive notice of their existence and cannot be protected by the recording statutes and are not bona fide purchasers for value without notice of a legal defect as to the Weathersby Deed.

16. The Lewis Deed and the [Chase] Mortgage were of record for at

least five years before the Weathersby Deed and MERS Mortgage were recorded. The recording statute dictates that instruments have priority according to the time of filing.

17. The Weathersby Deed and MERS Mortgage were recorded outside of the chain of title to the Property and after both the Lewis Deed and the [Chase] Mortgage. As a subsequent mortgagee in good faith and for a valuable consideration whose mortgage was first recorded without notice of any adverse claims in the Lewis chain of title, the [Chase] Mortgage is a valid interest in the Property and free from the interest of Weathersby and MERS.

18. Because this Court entered a default judgment against 5285 Adams Trust on September 24, 2007, for failure to answer or otherwise respond to the complaint, 5285 Adams Trust has no estate, right, title, lien, claim or interest in the Property. As a result, the only party who could assert an interest in the Property potentially superior to [Chase] has been adjudged to have no interest.

19. As to the remaining competing claims, [Chase] is a bona fide purchaser for value as to Weathersby and MERS, but Weathersby and MERS are not bona fide purchasers for value as to [Chase].

Appellant's Appendix at 19–21. Consequently, the trial court granted summary judgment to Chase.

The issue is whether the trial court erred by finding that Chase's mortgage was valid and that Weathersby's deed and MERS's mortgage were invalid. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

■ Weathersby and MERS argue that Chase's mortgage and Lewis's title are not valid. Specifically, Weathersby and MERS contend that Tony Blair could not convey the Property to Lewis because he had already transferred the Property to the 5285 Adams Trust. Weathersby and MERS argue that Lewis was not a bona fide purchaser.

■ Although Weathersby and MERS focus on the split in the chain of title resulting when Tony Blair transferred title to both Lewis and the 5285 Adams Trust, a party must recover on the strength of his own title. *Ritz v. Indiana & Ohio R.R., Inc.*, 632 N.E.2d 769, 772 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* It is not sufficient that the evidence

shows the other party to be without title. *Id.* Consequently, just as it is not sufficient for Chase to show that Weathersby and MERS do not have title, it is also not enough for Weathersby and MERS to show a dispute between Lewis and the 5285 Adams Trust.[3]

■ "In order to qualify as a bona fide purchaser, one must purchase in good faith, for valuable consideration, and without notice of the outstanding rights of others." *Bank of New York v. Nally*, 820 N.E.2d 644, 648 (Ind.2005). The law recognizes both constructive and actual notice. *Id.* Although the parties focus their arguments on constructive notice, we conclude that a genuine issue of material fact exists, precluding summary judgment, as to actual notice.

■ We begin by addressing the parties' constructive notice argument. Indiana is a race-notice state, and Ind. Code § 32–21–4–1 provides, in part:[4]

(a) The following must be recorded in the recorder's office of the county where the land is situated:

---

3. Weathersby and MERS also argue that Chase's declaratory judgment action was improper. Weathersby and MERS argue that Chase should have brought a quiet title action instead. Weathersby and MERS seem to argue that Chase's burden of proof is different under the quiet title statutes and declaratory judgment statutes.

Ind.Code § 32–30–2–20 governs persons entitled to bring a quiet title action and provides:

An action to determine and quiet a question of title to property may be brought by a plaintiff who:

(1) is in possession of the property;

(2) is out of possession of the property; or

(3) has a remainder or reversion interest in the property;

against a defendant who claims title to or an interest in the real property with a claim that is adverse to the plaintiff, even if the defendant is not in possession of the property.

However, Chase is not seeking title to the Property; rather, Chase is seeking a judgment as to the validity of its mortgage on the Property. The Indiana Uniform Declaratory Judgment Act provides:

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Ind.Code § 34–14–1–2. Chase clearly has an interest in the Property as a result of its mortgage. Under either action, Chase would be required to demonstrate the strength of Lewis's title and its mortgage. Consequently, we cannot say that Chase was required to bring a quiet title action rather than a declaratory judgment action.

Weathersby and MERS also argue in their reply brief that Chase's declaratory judgment action should fail because Chase should have named Lewis as a party to the declaratory judgment action. However, Weathersby and MERS did not make this argument in their appellant's brief and, thus, have waived the issue. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind.2005) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived.").

4. At the time of the Blair Family Trust's conveyance of the Property to both the 5285 Adams Trust and FHCS, Indiana's race-notice statute was found at Ind.Code § 32–1–2–16 and, similar to the current statute, provided:

Every conveyance or mortgage of lands or of any interest therein, and every lease for more than three (3) years shall be recorded in the recorder's office of the county where such lands shall be situated; and every conveyance, mortgage or lease shall take priority according to the time of the filing thereof, and such conveyance, mortgage or lease shall be fraudulent and void as against any subsequent purchaser, lessee or mortgagee in good faith and for a valuable consideration, having his deed, mortgage or lease first recorded.

(1) A conveyance or mortgage of land or of any interest in land.

(2) A lease for more than three (3) years.

(b) A conveyance, mortgage, or lease takes priority according to the time of its filing. The conveyance, mortgage, or lease is fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration if the purchaser's, lessee's, or mortgagee's deed, mortgage, or lease is first recorded.

"The recording statutes offer protection to subsequent purchasers, lessees, and mortgagees." *Szakaly v. Smith*, 544 N.E.2d 490, 492 (Ind.1989).

In *Szakaly*, the Indiana Supreme Court described the concept of "chain of title" to a tract of land:

In a title search, the prospective purchaser or his abstractor assesses the marketability of title to a tract of land by determining the "chain of title." Beginning with the person who received the grant of land from the United States, the purchaser or abstractor traces the name of the grantor until the conveyance of the tract in question. The particular grantor's name is not searched thereafter. As the process is repeated, the links in the chain of title are forged.

*Szakaly*, 544 N.E.2d at 491–492 (citing Schroeder, TITLE SEARCHES AND MARKETABLE TITLE, BASIC REAL ESTATE PRACTICE I–30 (1986)). County recorders must maintain a name index system for recording deeds and mortgages. Ind.Code § 36–2–11–12. Under this system all deeds and mortgages are indexed alphabetically by grantor and by grantee or mortgagor and mortgagee, both with cross-references to the other party. *Id.* The indices describe the tract and show the date of the deed's recording. *Id.* The indices refer a prospective purchaser or encumbrancer to the recorded instruments. *Id.*

A "purchaser of real estate is presumed to have examined the records of such deeds as constitute the chain of title thereto under which he claims, and is charged with notice, actual or constructive, of all facts recited in such records showing encumbrances, or the non-payment of purchase-money." *Nally*, 820 N.E.2d at 648 (quoting *Smith v. Lowry*, 113 Ind. 37, 44, 15 N.E. 17, 20 (1888)). However, "[a] record outside the chain of title does not provide notice to bona fide purchasers for value." Id at 648–649 (quoting *Szakaly*, 544 N.E.2d at 492). These rules apply to both purchasers and mortgagees. *Id.* at 649. Thus, "when multiple parties claim adverse interests in the same land, the date of recording provides a means to determine priority among those claims." *Patterson v. Seavoy*, 822 N.E.2d 206, 211 (Ind.Ct.App.2005).

We must begin our analysis by discussing the effect of the Blair Family Trust's earlier conveyance of the Property to both the 5285 Adams Trust and FHCS. As noted above, Delfine, trustee of the Blair Family Trust, transferred the Property to the 5285 Adams Trust with a quitclaim deed dated October 8, 1998, and recorded October 13, 1998. However, he had previously transferred the Property by quitclaim deed to FHCS on July 24, 1998, but that quitclaim deed was not recorded until November 13, 1998.

Chase argues that the deed to FHCS did not provide constructive notice to the 5285 Adams Trust because, although the deed to FHCS was dated earlier than the deed to the 5285 Adams Trust, it was recorded a month after the 5285 Adams Trust deed was recorded. We agree that, under Ind.Code § 32–21–4–1, the 5285

Adams Trust did not have constructive notice of the deed to FHCS.[5] However, the parties have not addressed whether the 5285 Adams Trust had actual notice.

 "[A]n otherwise valid instrument which is ... recorded out of the chain of title does not operate as constructive notice, *although·binding upon persons having actual notice.*" *Keybank Nat. Ass'n v. NBD Bank,* 699 N.E.2d 322, 327 (Ind.Ct.App.1998) (emphasis added). "Notice is actual when notice has been directly and personally given to the person to be notified." *Id.* Additionally, actual notice may be implied or inferred from the fact that the person charged had means of obtaining knowledge which he did not use. hi Whatever fairly puts a reasonable, prudent person on inquiry is sufficient notice to cause that person to be charged with actual notice, where the means of knowledge are at hand and he omits to make the inquiry from which he would have ascertained the existence of a deed or mortgage. *Id.* Thus, the means of knowledge combined with the duty to utilize that means equates with knowledge itself. *Id.* Whether knowledge of an adverse interest will be imputed in any given case is a question of fact to be determined objectively from the totality of the circumstances. *Id.*

The question here is whether the 5285 Adams Trust had actual knowledge in October 1998 of the prior unrecorded deed to FHCS. The designated evidence shows that Delfine, as trustee of the Blair Family Trust, transferred the Property by quitclaim deed to FHCS on July 24, 1998.

The Blair Family Trust also transferred the Property to the 5285 Adams Trust with a quitclaim deed dated October 8, 1998, and recorded October 13, 1998. That deed was prepared and signed by Delfine, but it did not identify him as a trustee of the Blair Family Trust or of the 5285 Adams Trust. Delfine, as trustee of the 5285 Adams Trust, then transferred the Property to Tony Blair with a trustee's deed dated June 9, 1999, and recorded June 17, 1999.

This evidence demonstrates that Delfine was aware that the Property had been transferred to both FHCS and the 5285 Adams Trust in 1998. In June 1999, Delfine was identified as the trustee of the 5285 Adams Trust. However, the designated evidence does not demonstrate whether Delfine was also the trustee of the 5285 Adams Trust in October 1998 or whether Delfine's knowledge would be imputed to the 5285 Adams Trust. As a result, we conclude that genuine issues of material fact exist regarding whether the 5285 Adams Trust had actual knowledge in October 1998 of the prior transfer from the Blair Family Trust to FHCS and, thus, whether the 5285 Adams Trust was a bona fide purchaser of the Property. If the 5285 Adams Trust was not a bona fide purchaser of the Property, the chain of title leading to Lewis and Chase fails. We conclude that the trial court erred by granting summary judgment to Chase, and we remand for proceedings consistent with this opinion.

For the foregoing reasons, we reverse the trial court's grant of summary judg-

---

5. Likewise, Weathersby and MERS also argue that Lewis had constructive notice of the July 1999 deed from Tony Blair to the 5285 Adams Trust and that Blair's November 1999 deed to Lewis was void. We agree that Lewis would have had constructive notice of the deed to the 5285 Adams Trust because it was recorded prior to the deed to Lewis. However, when named as a party to this action, the 5285 Adams Trust defaulted, and a judgment was entered against it. Because we reverse the trial court's grant of summary judgment to Chase on other grounds, we need not address the effect of the deed from Blair to the 5285 Adams Trust and the default judgment.

ment to Chase and remand for further proceedings.

Reversed and remanded.

CRONE, J. and BRADFORD, J., concur.