

FILED

Jun 29 2018, 5:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James R. Bryon
Lisa Gilkey Schoetzow
Thorne Grodnik, LLP
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Tammy L. Ortman
Jennifer S. Ortman
Lewis & Kappes, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Terrance E. Chmiel,

*Appellant-Plaintiff,*

v.

US Bank National Association,

*Appellee-Defendant.*

June 29, 2018

Court of Appeals Case No.
75A05-1708-PL-1979

Appeal from the Starke Circuit
Court

The Honorable Kim Hall, Judge

Trial Court Cause No.
75C01-1505-PL-20

**Pyle, Judge.**

## Statement of the Case

[1]   Terrance E. Chmiel ("Chmiel") appeals the trial court's grant of summary judgment in favor of U.S. Bank, National Association ("U.S. Bank") on U.S. Bank's cross-motion for summary judgment in Chmiel's quiet title proceedings. Chmiel argues that the trial court erred in determining that: (1) his quiet title action was barred by the statute of limitations; (2) his quiet title action was

barred by the doctrine of laches; (3) a 2005 deed in which he purportedly conveyed his property rights to his mother was valid; and (4) U.S. Bank was a bona fide mortgagee[1] of the property at issue. Because we conclude that: (1) Chmiel's quiet title action was not barred by the statute of limitations; and (2) there remain genuine issues of material fact regarding whether: (a) the doctrine of laches bars Chmiel's claim; (b) the 2005 deed was valid; and (c) U.S. Bank was a bona fide mortgagee, we agree that the trial court erred when it granted summary judgment. We reverse the trial court's order and remand for further proceedings.

[2] We reverse and remand.

## Issues

1. Whether the trial court erred in granting summary judgment based on its determination that Chmiel's quiet title action was barred by the statute of limitations.

2. Whether the trial court erred in granting summary judgment based on its determination that Chmiel's quiet title action was barred by laches.

3. Whether the trial court erred in granting summary judgment based on its determination that a 2005 deed to the property at

---

[1] Throughout the documents in this case, the parties alternately refer to U.S. Bank as a bona fide purchaser and a bona fide mortgagee. We conclude that the parties are using different terminology for the same concept—the doctrine of bona fide purchaser in the context of purchasing the right to enforce a mortgage. Our case law has clarified that the bona fide purchaser doctrine can apply in the mortgage context, so the bona fide mortgagee doctrine is not distinct from the bona fide purchaser doctrine. *See Weathersby v. JPMorgan Chase Bank, N.A.*, 906 N.E.2d 904 (Ind. Ct. App. 2009) (discussing the doctrine of bona fide purchaser in the context of a property dispute). Based on the context of the parties' arguments, we will use the terminology "bona fide mortgagee" rather than "bona fide purchaser."

issue was valid.

4.  Whether the trial court erred in granting summary judgment based on its determination that U.S. Bank was a bona fide mortgagee.

# Facts

[3] On November 27, 1991, Chmiel's mother, Ann L. Nied ("Ann"), and step-father, Ovid O. Nied ("Ovid"), conveyed to Chmiel a fee simple interest in their property ("the Property") subject to life estates in their names. The deed conveying the Property ("1991 Deed") was recorded in the Starke County Recorder's Office on December 3, 1991. Ovid then died on November 18, 2000.

[4] On October 31, 2005, a quitclaim deed ("2005 Deed") conveying Chmiel's fee simple interest in the Property back to Ann was registered in the Starke County Recorder's Office. The 2005 Deed included two signature pages, each containing Ann's signature and a signature purporting to belong to Chmiel. The first signature page was dated October 13, 2005 and had been notarized by a notary public named Gale J. Davis ("Notary Davis"). The second signature page was dated October 6, 2005 and had been notarized by a notary public named Sandra L. Hansen.

[5] After Ann received title to the fee simple interest in the Property, she executed a promissory note ("Note") to Homeowners Loan Corporation ("Homeowners") and a mortgage ("Mortgage") on the Property securing the Note, in exchange

for $40,000. The terms of the Mortgage described Ann's fee simple interest in the Property rather than the life estate she had retained in the 1991 Deed.

[6] Two years later, on August 9, 2007, Chmiel's attorney wrote a letter ("First Letter") to Homeowners to notify the company that Chmiel had become aware of the 2005 Deed and Mortgage and disputed the 2005 Deed's legitimacy. Specifically, Chmiel claimed that his signature on the 2005 Deed was forged and that he still owned a fee simple interest the Property. Chmiel also asserted that, because he still owned a fee simple interest in the Property, the Mortgage applied to only the life estate interest that Ann had retained in the 1991 Deed. Homeowners did not respond to Chmiel's letter.

[7] Thereafter, the Note and Mortgage were assigned to other entities, but the dates of those assignments and names of those assignees are not a part of the record. Chmiel's attorney wrote a letter dated May 27, 2009 ("Second Letter") to Homecoming Financial, the apparent Mortgage assignee or loan servicer at that time, to notify the company of his allegations regarding the 2005 Deed and the Mortgage. He also attached a copy of the First Letter to this Second Letter. Homecoming Financial did not respond to the Second Letter.

[8] Thereafter, ownership of the Note and Mortgage apparently changed, and on March 29, 2010, Chmiel's attorney wrote a letter ("Third Letter") to GMAC Mortgage, LLC ("GMAC Mortgage"), to advise the company of his interest in the Property. He attached copies of his First and Second Letters to this Third Letter. GMAC Mortgage replied to the Third Letter on April 9, 2010, writing

that it "acknowledge[d] Mr. Chmiel's allegations of forgery" but stating that it "[did] not investigate this type of fraud on behalf of third parties." (App. Vol. 4 at 88). The company suggested that Chmiel might "wish to take legal action against the alleged perpetrator" and requested Chmiel to forward any police reports or other documents pertaining to any such investigation. (App. Vol. 4 at 88).

[9] On July 28, 2011, the Mortgage Electronic Registration System ("MERS"), as "nominee for Homeowners Loan Corporation, its successors and/or assigns," assigned the Mortgage to U.S. Bank "as trustee for RASC."[2] (App. Vol. 4 at 152). Shortly thereafter, U.S. Bank initiated foreclosure proceedings because Ann had defaulted on the Mortgage payments. Chmiel filed a motion to intervene in the foreclosure proceedings, claiming again that he owned a fee simple interest in the Property and that his signature on the 2005 Deed had been forged. However, the foreclosure proceedings were stayed when Ann filed a petition for bankruptcy in the Northern District of Indiana United States Bankruptcy Court. Chmiel entered an appearance in the bankruptcy proceedings and filed a motion requesting that the bankruptcy court abandon

---

[2] MERS did not have an ownership interest in the Mortgage or Note. It appears that RASC owned the Note, and U.S. Bank served as Trustee for RASC. A trustee of an express trust may sue or be sued in its own name without joining the trust, as long as it states the trustee's relationship and capacity. Ind. T.R. 17. MERS is "'a computer database designed to track servicing and ownership rights of mortgage loans anywhere in the United States.'" *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 809 (Ind. 2012) (quoting Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1367-68 (2009-2010)). We will describe the nature of MERS more fully later in the Discussion section of this Opinion.

the Property as an asset of Ann's bankruptcy estate. In this motion, Chmiel again argued that the 2005 Deed had been forged and that he still owned a fee simple interest in the Property.

[10] Ultimately, Ann and her creditors agreed to a Chapter 13 bankruptcy plan that provided that Ann would make monthly mortgage payments and cure the pre-bankruptcy petition arrearage. Because Chapter 13 bankruptcy plans allow debtors to retain assets and pay off their debts with future income, neither the foreclosure court nor the bankruptcy court ruled on the ownership of the Property after Ann agreed to the Chapter 13 bankruptcy plan. *See McCullough v. CitiMortgage, Inc.*, 70 N.E.3d 820, 826 (Ind. 2017) (explaining Chapter 13 bankruptcy plans) (internal citations and quotations omitted).

[11] Subsequently, Ann made timely mortgage payments until she passed away on January 21, 2015. One year later, on January 19, 2016, Chmiel filed a complaint against U.S. Bank to quiet title to the Property. He argued that the Mortgage was a cloud on his fee simple title and asked the trial court to: (1) determine that he owned a fee simple title to the Property; (2) find that the Mortgage had expired upon Ann's death because it applied to only her life estate; and (3) quiet his fee simple title to the Property against U.S. Bank. U.S. Bank filed an Answer raising the affirmative defense that it was a holder in due course of the Mortgage.

[12] On March 23, 2017, Chmiel filed a motion for summary judgment. As designated evidence, Chmiel attached an affidavit in which he averred that he

had not signed the 2005 Deed and had not been aware that Ann had obtained a mortgage on the Property. He also averred that he had never transferred his interest in the Property to Ann or to any other party.

[13] U.S. Bank filed a response in opposition to Chmiel's summary judgment motion, as well as its own cross-motion for summary judgment. In its cross-motion, U.S. Bank argued that: (1) it was a bona fide mortgagee because it had purchased the right to enforce the Mortgage in good faith and without any notice of Chmiel's claims regarding the validity of the 2005 Deed; and (2) Chmiel's cause of action was barred by either the statute of limitations for forgery or the doctrine of laches. In support of its argument that it had not received notice, U.S. Bank contended that, under Indiana law, the signatures on the 2005 Deed were prima facie valid because they contained a certificate of acknowledgement from a notary public. Therefore, according to U.S. Bank, it had not had cause to question the 2005 Deed's validity or had notice of Chmiel's allegations.

[14] U.S. Bank also designated an affidavit from Notary Davis, who had notarized the October 13, 2005 signature page of the 2005 Deed. In the affidavit, Notary Davis averred that she had met with Ann and Chmiel on October 13, 2005 at her office and that she knew, based on her knowledge of the "manner in which [she] kept and maintained records of transactions" that she "would have reviewed and made a photocopy of each of their [d]rivers [l]icenses to confirm their identities" and would have kept those photocopies in her notary journal. (App. Vol. 3 at 41-42). She explained that those records had been "destroyed in

the ordinary course after the passage of five years." (App. Vol. 3 at 42). Notary Davis further averred that she would not have notarized the quitclaim deed unless she had witnessed both Ann and Chmiel personally sign it on October 13, 2005.

[15] Chmiel filed a response to U.S. Bank's cross-motion for summary judgment in which he disputed U.S. Bank's arguments. First, Chmiel contended that U.S. Bank had waived its statute of limitations, laches, and bona fide mortgagee arguments by failing to raise them as affirmative defenses in its Answer. Alternatively, he claimed that the statute of limitations and laches arguments failed as a matter of law because he had not unduly delayed in asserting his rights or filed his quiet title claim past the statute of limitations. As for U.S. Bank's bona fide mortgagee claim, Chmiel argued that: (1) a forged deed cannot convey property rights, even to a bona fide mortgagee; (2) U.S. Bank had not paid consideration for the Mortgage, as required to qualify as a bona fide mortgagee; and (3) U.S. Bank had received notice regarding Chmiel's claims and, therefore, did not qualify as a bona fide mortgagee.

[16] In support of his arguments, Chmiel designated a supplemental affidavit in which he disputed that he had met with Notary Davis on October 13, 2005. Specifically, he averred:

> I have never been in that office. According to a calendar, October 13, 2005 was a Thursday. At that time in my career, I was working as a police officer for the police department of the City of Elkhart, Indiana. The City of Elkhart Police Department's records show that I was on temporary duty on

October 13, 2005. My temporary duty at that time had me at the Indiana State Police Post in Indianapolis for a Governor's Council meeting for impaired and dangerous drivers. I did not travel to Knox, Indiana on that day to be with my mother to sign the [2005 Deed]. The other date on the [2005 Deed] for my forged signature was October 6, 2005. The City of Elkhart Police Department records show I was working my regular dut[y] that day which was a patrol officer on the midnight shift.

(App. Vol. 4 at 27-28). Also in his affidavit, Chmiel contended that there were "obvious differences observable from a comparison of [his] signature on [his affidavits] . . . and [his] purported signatures on the [2005 Deed]." (App. Vol. 4 at 28). He speculated that his purported signatures on the 2005 Deed appeared to be in Ann's handwriting.

[17]     In addition to his own affidavit, Chmiel designated an affidavit from Mary Chomer ("Chomer") of the Elkhart City Police Department, as well as his employee service record for 2005. In her affidavit, Chomer explained that her job responsibilities as an employee of the Elkhart Police Department included creating employee service records for the Police Department's employees. She averred that she had compiled Chmiel's employee service record in 2005 and that Chmiel had been on "temporary duty" on October 13, 2005. "[T]emporary duty" meant that "Chmiel [had] worked that day but not his usual responsibilities." (App. Vol. 4 at 174). As for October 6, 2005, the date listed on the second signature page in the 2005 Deed, Chomer averred that Chmiel had performed his "usual responsibilities that day." (App. Vol. 4 at 174).

Chmiel's employee service record for 2005, which Chomer attached to her affidavit, was consistent with these averments.

[18] Chmiel also designated interrogatories from U.S. Bank. These interrogatories included the following relevant questions from Chmiel and answers from U.S. Bank, which were relevant to the question of whether U.S. Bank had paid consideration for the Note and Mortgage and, thus, qualified as a bona fide mortgagee:

> 1. How much money did U.S. Bank pay for the assignment of the Note and Mortgage[?] . . . .
>
> ANSWER NO. 1: Subject to and without waiving any General Objection, the Interrogatory seeks information in the possession of a non-party to this litigation, and is not reasonably calculated to lead to relevant or admissible evidence. *U.S. Bank is neither the holder of the Note nor the assignee of the Mortgage.*
>
> \* \* \* \* \*
>
> 4. When did U.S. Bank purchase the Mortgage and/or take an assignment of the mortgage[?]
>
> ANSWER No. 4: Subject to and without waiving any General Objection, U.S. *Bank neither purchased nor is it the assignee of the Mortgage.* See also Answer No. 1.
>
> 5. Who did U.S. Bank purchase and/or take an assignment of the Mortgage from[?]
>
> ANSWER NO. 5: Subject to and without waiving any General Objection, *U.S. Bank neither purchased nor is it the assignee of the Mortgage.* See also Answer No. 1, 4.

6. If the consideration for the assignment of the Mortgage was other than money, what was the consideration that U.S. Bank gave for the assignment of the Mortgage[?]

Answer No. 6: Subject to and without waiving any General Objection, *U.S. Bank is not the assignee of the Mortgage*. See also Answer 1, 4, 5.

(App. Vol. 4 at 161-62) (Emphasis added).

[19] In support of his argument that U.S. Bank had received notice of his claims regarding the 2005 Deed prior to the assignment of the Mortgage, Chmiel designated U.S. Bank's attorney's "Notice of Appearance" from Ann's bankruptcy proceedings. (App. Vol. 4 at 155). Per the Notice of Appearance, U.S. Bank's attorney had represented "GMAC Mortgage LLC successor by merger of GMAC Mortgage Corp. Servicer for U.S. Bank National Association as Trustee" in the bankruptcy case. (App. Vol. 4 at 155). In his response to U.S. Bank's cross-motion for summary judgment, Chmiel argued that this notice raised a genuine issue of material fact regarding whether GMAC Mortgage had been the loan servicer for the Mortgage on behalf of U.S. Bank at the time of his March 29, 2010 letter to GMAC Mortgage and that U.S. Bank had, therefore, received notice of his claim before MERS assigned the Mortgage to U.S. Bank on July 28, 2011.

[20] On July 31, 2017, the trial court entered an order denying Chmiel's motion for summary judgment and granting U.S. Bank's cross-motion. The court ruled that: (1) Chmiel's claim was barred by the statute of limitations because it was based on a forgery allegation, which carries a statute of limitations of two years;

(2) Chmiel's claim was barred by the doctrine of laches; (3) the 2005 Deed was valid because an acknowledgment by a notary carries a presumption of validity, and Chmiel had designated only a self-serving affidavit to rebut that presumption; and (4) the Mortgage was valid because U.S. Bank was a bona fide mortgagee. Chmiel now appeals.

## Decision

[21] On appeal, Chmiel challenges the trial court's grant of U.S. Bank's cross-motion for summary judgment but does not dispute the trial court's denial of his own motion for summary judgment. We review a grant of summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56 (C)). On review, we may affirm a grant of summary judgment on any grounds supported by the designated evidence. *Catt v. Bd. of Comm'rs of Knox Cty.*, 779 N.E.2d 1, 3 (Ind. 2002).

[22] The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to

judgment as a matter of law." *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012). If the moving party meets this burden, the nonmoving party must designate evidence demonstrating a genuine issue of material fact. *Id.* We "resolve all questions and view all evidence in the light most favorable to the non-moving party, so as to not improperly deny him his day in court." *Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1259 (Ind. 2014) (internal citation omitted). We "consciously err[] on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley*, 15 N.E.3d at 1004. In other words, "'summary judgment is not a summary trial.'" *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1190 (Ind. 2016) (quoting *Hughley*, 15 N.E.3d at 1004-05) (internal quotation omitted). "Defeating summary judgment requires only a genuine issue of material fact, not necessarily a persuasive issue of material fact." *Id.*

[23] Chmiel's claim against U.S. Bank was an action to quiet title. An action to quiet title brings into issue all claims regarding the property in question. *Consolidation Coal Co. v. Mutchman*, 565 N.E.2d 1074, 1078 (Ind. Ct. App. 1990), *trans. denied.* A plaintiff may recover only upon the strength of his own title and must show that he has legal title with a present right of possession paramount to the title of the defendant. *Id.* It is therefore appropriate for a defendant to prove that the plaintiff does not have title or interest in the property. *Id.* Considering this standard in the context of summary judgment, U.S. Bank had the burden of showing that Chmiel did not have legal title to the Property with a present right of possession paramount to its own interest in the Mortgage. *See id.*

[24] To meet this burden, U.S. Bank presented four alternate grounds for its argument that it deserved summary judgment on its cross-motion: (1) the statute of limitations for forgery applied to Chmiel's claim, and that statute of limitations had run; (2) the doctrine of laches warranted judgment in favor of U.S. Bank; (3) the 2005 Deed was valid, so Chmiel did not have legal title to the Property; and (4) U.S. Bank was a bona fide mortgagee, so the Mortgage was valid. The trial court granted summary judgment to U.S. Bank on all of these grounds. Notably, while the trial court split these third and fourth points into separate findings, they are both grounds for concluding that the fee simple interest in the Property—whether owned by Chmiel or not—was subject to the Mortgage, thereby defeating Chmiel's quiet title action by demonstrating that Chmiel did not have a "paramount" interest in the Property. *See Consolidation Coal Co.*, 565 N.E.2d at 1078. Chmiel disputes each of these four grounds on appeal. We will address each in turn.

### 1. Statute of Limitations

[25] The trial court concluded that Chmiel's quiet title action was time-barred because it was based on a forgery claim, which carries a statute of limitations of two years. Because Chmiel had notified Homeowners that he knew about the 2005 Deed in his First Letter in 2007, the trial court ruled that the statute of limitations on his forgery claim had run in 2009. Chmiel disputes this conclusion, arguing that his claim was an action to quiet title and carries a statute of limitation of ten years. He notes that he filed his complaint in 2016, which was within ten years of his 2007 letter.

[26] Statutes of limitation "'are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost.'" *Mizen v. State ex rel. Zoeller*, 72 N.E.3d 458, 465 (Ind. Ct. App. 2017) (quoting *Russo v. S. Developers, Inc.*, 868 N.E.2d 46, 48 (Ind. Ct. App. 2007)), *trans. denied.* "'They are enacted upon the presumption that one having a well-founded claim will not delay in enforcing it.'" *Id.* (quoting *Morgan v. Benner*, 712 N.E.2d 500, 502 (Ind. Ct. App. 1999), *trans. denied*). Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury has been sustained as a result of the tortious act of another. *Messmer v. KDK Fin. Servs., Inc.*, 83 N.E.3d 774 (Ind. Ct. App. 2017). Notably, a statute of limitations defense is a proper consideration on summary judgment. *Mizen*, 72 N.E.3d at 465. If the undisputed facts establish "'that the complaint was filed after the running of the applicable statute of limitations, the trial court must enter judgment for the defendant.'" *Id.* at 466.

[27] Here, the trial court cited INDIANA CODE § 34-24-3-1 as the basis for its conclusion that Chmiel's "claims of forgery were time barred in 2009." (App. Vol. 4 at 187). However, INDIANA CODE § 34-24-3-1 concerns the damages that a person may recover for property offenses and does not mention statutes of limitation or forgery at all. *See id*. Also, Indiana courts have previously held that, when an action to quiet title incidentally alleges misconduct such as fraud or forgery, the statute of limitations for quiet title applies. *See Detwiler v.*

*Schultheis*, 23 N.E. 709, 711 (Ind. 1890) (holding that, where the gravamen of the action was for quiet title to real estate, not for relief against fraud, the statute for relief against fraud did not apply because "[f]raud may be, and in fact [was], an incident to the cause of action alleged in the complaint, but that [was] all"); *Miladin v. Istrate*, 119 N.E.2d 12, 17 (Ind. Ct. App. 1954) (considering plaintiff's action to foreclose a mortgage, which was dependent on proving defendant's fraud, and concluding that the fraud statute applied "when the immediate and primary object of the suit [was] to obtain relief from the fraud and not to actions which fall within some other class even though questions of fraud may rise incidentally"), *reh'g denied*. Because the primary object of Chmiel's suit was to quiet title to the Property rather than to obtain relief from, or damages for, Ann's alleged forgery, we conclude that the forgery aspect of his claim was incidental, and the trial court should have applied the statute of limitations for quiet title.

[28] The proper statute of limitations for a quiet title claim is an issue that we have not addressed in several decades; nor do the statutory provisions for quiet title explicitly establish a limit. *See* I.C. § 32-30-2. Chmiel argues that the proper limit is ten years because a quiet title action is equivalent to an action "for the recovery of the possession of real estate," which carries a ten-year statute of limitations under INDIANA CODE § 34-11-2-11. While we agree with Chmiel that the proper statute of limitations is ten years, we disagree with the origin of that limit.

Historically, it appears that Indiana courts applied the residual statute of limitation—the statute of limitation for actions not otherwise limited by statute—to quiet title actions, rather than the statute of limitation "for the recovery of possession of real estate." In *Royse v. Turnbaugh*, 20 N.E. 485, 488-89 (Ind. 1889), for example, our supreme court noted that the statute of limitations for the recovery of possession of real estate was twenty years, whereas "all actions not limited by any other statute shall be brought within fifteen years." The supreme court later cited this section of *Royse* in *Stonehill v. Swartz*, 28 N.E. 620, 625 (Ind. 1891), as the basis for its conclusion that the proper statute of limitations for a quiet title action was fifteen years. By citing the *Royse* Court's reference to the residual statute of limitations, the *Stonehill* Court inherently determined that the statute of limitations for "the recovery of possession of real estate," which the *Royse* Court had also cited, did not apply to quiet title actions. *See id*. Other courts subsequently followed suit, applying a fifteen-year limit to quiet title actions. *See Eve v. Louis*, 91 Ind. 457, 472 (Ind. 1883); *Bradshaw v. Van Winkle*, 32 N.E. 877, 878 (Ind. 1892) ("This is an action to quiet title to real estate, and would not be barred in less than 15 years.") (citing *Eve*, 91 Ind. at 472 rather than a statutory basis for its fifteen-year limit).

Our residual statutory limit is no longer fifteen years, but we do still have a provision establishing a residual limit. Under INDIANA CODE § 34-11-1-2, "[a] cause of action that: (a) arises on or after September 1, 1982; and (2) is not limited by any other statute; must be brought within ten (10) years." The parties have not directed us to any statutes that have been enacted since *Royse*

and *Eve* that could potentially apply to quiet title claims.[3] Accordingly, we conclude that the residual statute of limitation still applies to quiet title claims. *See Stonehill*, 28 N.E. at 625. Therefore, a ten-year limit applied to Chmiel's claim under our current statutory scheme. *See* I.C. § 34-11-1-2. Because he indicated his knowledge of the 2005 Deed in 2007 and filed his complaint in 2016, he brought his claim within that ten-year limit. Thus, the trial court erred in granting summary judgment on the ground that Chmiel's claim was time-barred.[4]

## 2. Laches

---

[3] Conceivably, the statute governing "[a]ctions for injuries to property other than personal property" could apply to a quiet title action. *See* I.C. § 34-11-2-7. However, because this statute existed when our supreme court decided *Royse* and *Stonehill*, the Court likewise inherently determined that it did not apply to quiet title actions when the Court applied the residual clause, instead. *See* 1881 S., p. 240, Sec. 293.

[4] Because we have decided in Chmiel's favor on this issue, we need not address his argument that U.S. Bank waived its argument by failing to plead the statute of limitations as an affirmative defense. Nevertheless, we note that, "our courts have stated that 'a statute of limitations defense may properly be raised by a motion for summary judgment' even if not raised in the pleadings." *Mizen*, 72 N.E. 3d at 466 (quoting *Honeywell, Inc. v. Wilson*, 500 N.E.2d 1251, 1252 (Ind. Ct. App. 1986), *reh'g denied*, *trans. denied*). It is well-settled that the trial rules are "designed to avoid pleading traps," and the critical inquiry is "not whether the defendant could have raised its affirmative defense earlier," but "whether the defendant's failure to raise the affirmative defense earlier prejudiced the plaintiff." *Borne v. Nw. Allen Cty. Sch. Corp.*, 532 N.E.2d 1196, 1199 (Ind. Ct. App. 1989), *trans. denied.* In *Borne*, we held that:

> The presumption is that issues can be raised as they, in good faith, are developed. This presumption can be rebutted by the party against whom the new issue is raised by an affirmative showing of prejudice. In this context, delay alone does not constitute sufficient prejudice to overcome the presumption. Instead there must be a showing that the party in opposition will be deprived of, or otherwise seriously hindered in the pursuit of some legal right if injection of the new issue is permitted.

*Id.* (internal citations and quotations omitted).

Here, Chmiel did not prove that he was prejudiced by U.S. Bank's delay in raising its affirmative defenses. Accordingly, we will address his arguments regarding those defenses on the merits.

[31] Next, Chmiel argues that the trial court erred when it determined that his claim was barred by the doctrine of laches. Laches is an equitable defense that may be raised to stop a person from asserting a claim he would normally be entitled to assert. *Angel v. Powelson*, 977 N.E.2d 434, 445 (Ind. Ct. App. 2012). "'Laches is neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done.'" *Id.* (quoting *Gabriel v. Gabriel*, 947 N.E.2d 1001, 1007 (Ind. Ct. App. 2011). "'The general doctrine is well[-]established and long[-]recognized: Independently of any statute of limitation, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for laches in asserting them.'" *Id.* (quoting *SMDfund, Inc. v. Fort-Wayne-Allen Cty. Airport Auth.*, 831 N.E.2d 725, 729 (Ind. 2005), *cert. denied*, *reh'g denied*) (internal quotation omitted).

[32] The doctrine of laches may bar a plaintiff's claim if a defendant establishes the following three elements: (1) an inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. *Id.* A mere lapse of time is not sufficient to establish laches; it is also necessary to show an unreasonable delay that causes prejudice or injury. *Id.* Prejudice or injury may be created if a party, with knowledge of the relevant facts, permits the passing of time to work a change of circumstances by the other party. *Id.* Notably, the doctrine of laches "may bar a plaintiff's claim even though the applicable statute of limitations has not yet expired if the laches are of such character as to work an equitable estoppel (which contains the additional

element of reliance by the defendant).” *Shafer v. Lambie*, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996).

[33] Here, U.S. Bank argues that Chmiel committed inexcusable delay in asserting his rights because he knew about the forged deed for several years before he filed his complaint to quiet title. U.S. Bank again claims that this length of time was several years longer than the two-year statute of limitation for forgery and notes that, because Chmiel did not file a lawsuit to defend his property right, U.S. Bank did not receive notice through the chain of title regarding Chmiel's prior claims. U.S. Bank also emphasizes that Chmiel did not file a claim to quiet title even after the foreclosure and bankruptcy courts declined to address the merits of his claims as an intervening party.

[34] Even if we assume that U.S. Bank met its initial burden of proving the elements for laches, Chmiel designated evidence raising a genuine issue of material fact. First, we note that, as we determined above, Chmiel did not file his complaint to quiet title outside of the statute of limitations. He also designated evidence that he repeatedly defended his interest in the Property over the years. Specifically, he notified Homeowners and its subsequent assignees in the First, Second, and Third Letters that the 2005 Deed had been forged and that he acquiesced with the Mortgage only to the extent that it applied to Ann's life estate. Because the companies did not respond to his First and Second Letters, he did not receive any indication that they did not agree with his assertion that the Mortgage applied to only Ann's life estate. Chmiel also designated evidence that he later moved to intervene in Ann's foreclosure proceedings and

Ann's bankruptcy proceedings to defend his property interest. Based on this evidence, we conclude that there remains a question of fact regarding the elements of laches, namely whether Chmiel committed inexcusable delay in asserting his known right and knowingly acquiesced in existing conditions. Accordingly, the trial court erred in granting summary judgment on that ground.

### 3. Validity of 2005 Deed

[35] Next, Chmiel challenges the trial court's conclusion that the 2005 Deed was valid and, therefore, U.S Bank's summary judgment motion was warranted because Chmiel did not have an interest in the Property. The trial court based its conclusion on INDIANA CODE § 32-21-9-2, which provides that:

> An acknowledgment or other notarial act made substantially in the form prescribed by section 1 of this chapter is prima facie evidence:
>
>> (1) that the person named in the instrument as having acknowledged or executed the instrument;
>>
>>> (A) appeared in person before the officer taking the acknowledgment;
>>>
>>> (B) was personally known to the officer to be the person whose name was subscribed to the instrument; and
>>>
>>> (C) acknowledged that the person signed the instrument as a free and voluntary act for the uses and purposes set forth in the instrument. . . .

Citing this provision, the trial court concluded that the two notarized signature pages in the 2005 Deed were prima facie evidence that Chmiel, rather than another person, signed the 2005 Deed. Although Chmiel designated an affidavit in which he averred that he was employed in a different location on the day the 2005 Deed was signed and notarized, the trial court concluded that this affidavit was self-serving and insufficient to rebut the presumption of the prima facie evidence.

[36] On appeal, Chmiel argues that the trial court improperly weighed the evidence and that there was a genuine issue of material fact regarding whether he signed the 2005 Deed. We agree. First, we note that the trial court applied the incorrect standard to its decision. The statutory provision the trial court cited, INDIANA CODE § 32-21-9-2, falls within Chapter 9 of Article 21, which concerns "Written Instruments by Members of the Armed Forces." *See* I.C. § 32-21-9. The 2005 Deed was not a written instrument by a member of the armed forces, so this provision was inapplicable. Instead, the trial court should have applied INDIANA CODE § 32-21-2-12, which concerns certificates of acknowledgment, and provides that a "certificate of the acknowledgment of a conveyance or instrument of writing" is "not conclusive and may be rebutted and the force and effect of it contested by a party affected by the conveyance or instrument."

[37] Second, the trial court incorrectly concluded that a self-serving affidavit is insufficient to present a genuine issue of fact. Our supreme court has held otherwise. *See Hughley*, 15 N.E.3d at 1004. Moreover, Chmiel did not present

only his own self-serving affidavit. He also designated Chomer's affidavit and his employment record, which confirmed that he had been assigned to temporary duty, which Chomer averred meant that he had worked, but "not his usual responsibilities," on one of the days that the 2005 Deed had been signed and notarized. (App. Vol. 4 at 174). We conclude that this evidence was sufficient to raise a genuine issue of material fact regarding whether Chmiel signed the 2005 Deed, and the trial court therefore erred when it granted summary judgment on this issue.

### 4. Bona Fide Mortgagee

[38] Finally, Chmiel disputes the trial court's determination that U.S. Bank is a bona fide mortgagee. Generally, a bona fide mortgagee is entitled to protection from interest-holders outside the chain of title as a matter of equity. *Jenner v. Bloomington Cellular Servs., Inc.*, 77 N.E.3d 1232, 1237 (Ind. Ct. App. 2017), *trans. denied.* As a result, the trial court's determination that U.S. Bank was a bona fide mortgagee served to protect U.S. Bank's interest in the Mortgage, thereby defeating Chmiel's action to quiet title regarding the Mortgage. *See Consolidation Coal Co.*, 565 N.E.2d at 1078 (holding that a plaintiff seeking to quiet title must show that he has legal title with a present right of possession paramount to the title of the defendant).

[39] In order to qualify as a bona fide purchaser/mortgagee, one must purchase "in good faith, *for valuable consideration*, and *without notice* of outstanding rights of others." *U.S. Bank, Nat'l Ass'n v. Jewell Invs., Inc.*, 69 N.E.3d 524, 529 (Ind. Ct.

App. 2017) (emphasis in original and added). Here, Chmiel argues that U.S. Bank was not a bona fide mortgagee because it did not purchase the Note and Mortgage for valuable consideration and because it had notice of his dispute regarding the 2005 Deed and the Mortgage.

[40] With respect to consideration, U.S. Bank contends that it designated evidence that Ann received $40,000 when she executed the Note and Mortgage. However, we disagree that this evidence proves that U.S. Bank gave consideration for the Mortgage because the record shows that Homeowners— not U.S. Bank or RASC—gave $40,000 to Ann in exchange for the Note and Mortgage. It is likely that Homeowners' subsequent assignees paid consideration to Homeowners in exchange for the right to enforce the Note and Mortgage, but U.S. Bank did not designate any evidence of the consideration it gave for that assignment. Absent such evidence, U.S. Bank did not meet its burden of proving that it qualified as a bona fide mortgagee.

[41] Moreover, even if U.S. Bank had designated evidence regarding its consideration, Chmiel subsequently designated evidence raising a genuine issue of material fact. Specifically, in the interrogatories that Chmiel designated as evidence, he asked U.S. Bank how much money it had paid for the assignment of the Note and Mortgage. In its response, U.S. wrote: "U.S. Bank is neither the holder of the Note nor the assignee of the Mortgage." (App. Vol. 4 at 161). Likewise, when Chmiel asked U.S. Bank what consideration it had given for the assignment if the consideration "was other than money," U.S. Bank again responded: "U.S. Bank is not the assignee of the mortgage." (App. Vol. 4 at

162). It may be that U.S. Bank's answers in these interrogatories were attempts to avoid Chmiel's questions by providing the technical truth that it did not purchase the assignment because it served as Trustee for RASC. However, interpreting U.S. Bank's answers literally and in the light most favorable to the non-movant, U.S. Bank denied paying consideration for the Note and Mortgage. Thus, Chmiel's designated evidence raised a genuine issue of material fact regarding whether U.S. Bank paid consideration for the Mortgage.

[42] Next, Chmiel argues that there was a genuine issue of fact regarding whether U.S. Bank received notice of his allegations concerning the 2005 Deed prior to the assignment of the Mortgage. In its cross-motion for summary judgment, U.S. Bank argued that it did not have notice because Chmiel's allegations were not a part of the chain of title for the Property, and it had no cause to believe that a notarized deed would be invalid.

[43] The law recognizes both constructive and actual notice. *Bank of N.Y. v. Nally*, 820 N.E.2d 644, 648 (Ind. 2005). A "'purchaser of real estate is presumed to have examined the records of such deeds as constitute the chain of title thereto under which he claims, and is charged with notice, actual or constructive, of all facts recited in such records showing encumbrances, or the non-payment of purchase money.'" *Id.* (quoting *Smith v. Lowry*, 15 N.E. 17, 20 (1888)). A mortgage provides constructive notice to subsequent purchasers when it is properly acknowledged and recorded. *Id.* "'[A] record outside the chain of title does not provide notice to bona fide purchasers for value.'" *Id.* (quoting *Szakaly v. Smith*, 544 N.E.2d 490, 492 (Ind. 1989)). However, actual notice is equally

binding on mortgagees. *See Weathersby v. JPMorgan Chase Bank, N.A.*, 906 N.E.2d 904, 911 (Ind. Ct. App. 2009). Notice is actual when it has been directly and personally given to the person to be notified. *Id.* Additionally, actual notice may be implied or inferred from the fact that the person charged had means of obtaining knowledge that he did not use. *Id.* Whether knowledge of an adverse interest will be imputed in any given case is a question of fact to be determined objectively from the totality of the circumstances. *Id.* These rules apply to both purchasers and mortgagees. *Id.*

[44] U.S. Bank initially met its burden of producing evidence that it did not receive notice when it demonstrated that none of Chmiel's allegations were part of the chain of title. *See Bank of N.Y.*, 820 N.E.2d at 648 ("'[A] record outside the chain of title does not provide notice to bona fide purchasers for value.'") (quoting *Szakaly*, 544 N.E.2d at 492). However, Chmiel subsequently designated evidence raising a genuine issue of material fact regarding whether, even if U.S. Bank did not have constructive notice of his allegations, it did have actual notice.

[45] Chmiel directs our attention to U.S. Bank's counsel's Notice of Appearance in Ann's bankruptcy proceedings, which he designated as evidence. In this Notice of Appearance, U.S. Bank's counsel stated that she represented "GMAC Mortgage LLC successor by merger of GMAC Mortgage Corp. *Servicer* for U.S. Bank National Association as Trustee" in the bankruptcy case. (App. Vol. 4 at 155) (emphasis added). Chmiel argues that this statement proves that GMAC Mortgage was and/or is U.S. Bank's loan servicer. Because he notified GMAC

Mortgage of his allegations regarding the 2005 Deed in his March 29, 2010 Third Letter, he argues that U.S. Bank should have received notice of his allegations through GMAC Mortgage before MERS assigned the Mortgage to U.S. Bank on July 28, 2011.

[46] This argument depends on Chmiel's contention that GMAC Mortgage received notice of his allegations before U.S. Bank assumed ownership of the Note and Mortgage and that his notice to GMAC Mortgage can therefore be imputed to U.S. Bank. Addressing this second point first, we agree that GMAC Mortgage's knowledge can be imputed to U.S. Bank. As a loan servicer, GMAC Mortgage was an agent for the owner of the Note and Mortgage, and under agency law, an agent's knowledge may be imputed to its principal. *See Lexington Ins. Co. v. Am. Healthcare Providers*, 621 N.E.2d 332, 341 (Ind. Ct. App. 1993) ("[T]he knowledge of an agent acting within the scope of his authority is imputed to the principal."), *trans. denied.*

[47] However, the question of whether GMAC Mortgage received notice of Chmiel's allegations before U.S. Bank assumed ownership of the Note and Mortgage is complicated by the ambiguous nature of MERS and its involvement in mortgage assignments.[5] Chmiel's argument presumes that U.S. Bank assumed an ownership interest in the Mortgage when MERS officially assigned the Mortgage to U.S. Bank on July 28, 2011. However, that is not

---

[5] As stated above, on July 28, 2011, MERS, as "nominee for Homeowners Loan Corporation, its successors and/or assigns," assigned the Mortgage to U.S. Bank "as trustee for RASC." (App. Vol. 4 at 152).

necessarily true, based on MERS' involvement in the Mortgage assignment. Our supreme court explained the complex history of mortgages and the involvement of MERS in mortgage assignments in *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 809 (Ind. 2012), as follows:

> Traditional mortgages were folies á deux; the cast of characters consisted solely of Borrower and Lender. Lender, a bank, raised funds through customer deposits and loaned those funds out to Borrower. Lender retained both the mortgage and the promissory note until Borrower had paid his debt in full. Today, a typical mortgage is better described as a mass delusion, in which Borrower and Lender are joined by Loan Servicer, Title Company, Mortgage Broker, Underwriter, Trustee, and various other characters that facilitate the negotiation of mortgages on the secondary market.

> The change began in the 1970s with the invention of the mortgage-backed security, a financial instrument that allowed investors to trade mortgages in the same way that they traded stocks and bonds. First, a borrower works with a broker to obtain a loan from a lender, who receives credit from an investment bank to fund the loan. The lender then sells the loan back to the investment bank, which bundles it together with a few thousand others and divides the bundle into shares. These shares are sold to investors, who receive a certain amount of the income that the bundle earns every month when borrowers make their mortgage payments.

> This process, called "securitization," used to require multiple successive assignments, each of which had to be recorded on the county level at considerable inconvenience and expense to the investment banks involved. In the mid–1990s, seeking to ameliorate those evils, a consortium of investment banks created [MERS]. MERS maintains "a computer database designed to track servicing and ownership rights of mortgage loans anywhere

in the United States." MERS member banks list MERS as both "nominee" for Lender and as "mortgagee" on their mortgage documents. MERS member banks can then buy and sell the note among themselves without recording an assignment of the mortgage. In the event of default, MERS simply assigns the mortgage to whichever member bank currently owns the note, and that bank forecloses on the borrower.

(internal citations omitted).

[48] As the supreme court described, an assignment of a mortgage is no longer necessarily indicative of a transfer of ownership. Instead, it is possible that an assignee may own the rights to a note and mortgage for a period of time within MERS' records before it becomes the assignee of the mortgage for purposes of title records, as long as it does not need to foreclose on the borrower. *See id.* Applying this understanding to the instant case, it is possible that U.S. Bank bought the rights to the Note and Mortgage long before MERS officially assigned U.S. Bank the Mortgage. Accordingly, Chmiel's designated evidence does not prove that U.S. Bank received notice of his allegations from GMAC Mortgage through Chmiel's Third Letter before U.S. Bank purchased Note. It is possible that U.S. Bank owned the Note before Chmiel sent his Third Letter without undergoing an official assignment of the Mortgage. Nevertheless, we agree with Chmiel that he raised a genuine question of material fact regarding whether GMAC Mortgage received actual notice of his allegations before it became U.S. Bank's loan servicer and U.S. Bank acquired the Note. That genuine issue of material fact should be resolved in further proceedings.

Because we conclude that the statute of limitations did not bar Chmiel's claim and that there remain genuine issues of material fact regarding whether: (1) the doctrine of laches bars Chmiel's claim; (2) the 2005 Deed is valid; and (3) U.S. Bank was a bona fide mortgagee, the trial court erred in granting summary judgment on U.S. Bank's cross-motion for summary judgment.[6] We reverse and remand for further proceedings.

Reversed and remanded.

Kirsch, J., and Bailey, J., concur.

---

[6] U.S. Bank also argues that summary judgment was warranted based on the doctrine of equitable estoppel. However, U.S. Bank did not raise this argument in its cross-motion for summary judgment, and it is "well-settled that '[i]ssues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are waived.'" *Herzo v. City of Lawrenceburg*, 81 N.E.3d 1146, 1156-57 (Ind. Ct. App. 2017) (quoting *Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 387 (Ind. Ct. App. 2004)). Accordingly, U.S. Bank has waived that argument for appeal.